STANLEY STORES, INC., Appellant,

v.

Amadeo CHAVANA, Appellee.

No. 13–93–112–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 24, 1995.

Rehearing Overruled Nov. 16, 1995.

Frank S. Manitzas, San Antonio, Kenneth Fuller, Fuller & Fuller, San Antonio, for appellant.

Wanda Roberts, Garner, Roberts & Roberts, Port Lavaca, Larry D. Woody, Victoria, for appellee.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an age discrimination case in which Stanley Stores appeals from a judgment rendered following a trial to the court. Stanley Stores contends that the court was without jurisdiction to proceed to trial because Chavana failed to timely file a charge or complaint with the Texas Commission on Human Rights ("Commission") as required by statute. Additionally, Stanley Stores contends that the evidence is legally and factually insufficient to support the trial court's finding that Stanley Stores intentionally discriminated against Chavana because of his age, and that the court erred in awarding Chavana front pay, back pay, and expert witness fees. We affirm in part, reverse and remand in part, and reverse and render in part.

Chavana, age 51, worked at Stanley Stores for fourteen and one-half years holding various jobs. Chavana asserts that his employment was terminated because of his age and that he was replaced by a nineteen-year-old who was paid half his salary.

■ The trial court, by its judgment, ordered that Chavana recover from Stanley Stores Back Pay of $33,594.70, Front Pay of $106,838.00, Expert Witness Fees of $3,000.00, and Prejudgment Interest of $23,419.47. No findings of fact or conclusions of law were properly requested below and none were filed. Absent findings of fact and conclusions of law, all questions of fact are presumed to support the judgment, and the judgment will be affirmed if it can be upheld on any legal theory that finds support in the pleadings and the evidence. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); *Commercial Union Ins. Co. v. La Villa Indep. Sch. Dist.*, 779 S.W.2d 102, 104 (Tex.App.—Corpus Christi 1989, no writ); *Campbell & Son Constr. Co. v. Housing Auth.*, 655 S.W.2d 271, 274 (Tex.App.—Corpus Christi 1983, no writ).

### Jurisdiction

■ By points one and two, Stanley Stores contends that the trial court erred in rendering judgment because it lacked jurisdiction.

Appellant argues that Chavana filed his discrimination complaint with the Commission after the statutory limitations period had expired. If Chavana filed untimely with the Commission, the trial court would lack jurisdiction in this case.

We construe pleadings in favor of jurisdiction. *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989).

The federal Equal Employment Opportunity Commission ("EEOC") is responsible for enforcing Title VII, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin,[1] and the Age Discrimination in Employment Act ("ADEA"), which prohibits discrimination in employment against persons 40 years of age or older.[2] Both federal acts provide that if a state has its own anti-discrimination laws and fair employment practice agency, the EEOC must defer its processing of a discrimination complaint until the state has had at least 60 days to investigate and resolve it. One of the purposes of the Texas Commission on Human Rights Act ("CHRA") was to create a Texas "deferral agency" so that investigation and resolution of employment discrimination complaints could be addressed at the state level.

CHRA provides for a comprehensive administrative review system to carry out the policies embodied in Title VII. A complaint to the Commission about a discriminatory employment practice must be in writing, under oath or affirmation, stating that an unlawful employment practice has been committed. The writing must set forth the facts on which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice, and set forth facts sufficient to enable the commission to identify the person charged. Tex.Rev.Civ.Stat.Ann. art. 5221k, § 6.01(a) (currently codified at Tex.Lab.Code Ann. § 21.201 (Vernon Pamph.1995)). Under § 6 of the CHRA, a complaint must be filed with the Commission within 180 days after the date of the alleged unlawful employment practice occurred; untimely complaints shall be dismissed by the commission. Tex.Rev.

Civ.Stat.Ann. art. 5221k, § 6.01(a) (Vernon 1987) (currently codified at Tex.Lab.Code Ann. § 21.201 (Vernon Pamph.1995)). The time limit of 180 days is mandatory and jurisdictional. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex.1991) (citing *Green v. Aluminum Co. of Am.*, 760 S.W.2d 378, 380 (Tex.App.—Austin 1988, no writ)). Because Texas is a deferral state, if an employee wishes to pursue a remedy under the federal laws, Title VII or ADEA, the time limit for filing a complaint with the EEOC is 300 days rather than the 180 days under the CHRA.

Chavana's petition asserts that he timely filed charges of age discrimination with the EEOC and the Commission, and met all administrative prerequisites for this cause of action. The alleged unlawful employment practice at issue here occurred when Stanley Stores terminated Chavana after fifteen years of employment because of his age. The date of this event, March 14, 1990, is undisputed. Under CHRA, a complaint to the Commission must have been made within 180 days, by September 12, 1990.

Stanley Stores argues that the certified record of the EEOC shows that on October 9, 1990, Chavana's attorney mailed a completed and verified EEOC Form 5, Charge of Discrimination, signed by Chavana and dated "10–8–90" to the EEOC and asked that the form be filed with both the EEOC and the state Commission. Attached to the form was Exhibit "A" reciting in paragraph form Chavana's basis for his claim of age discrimination. The complaint was received and stamped "filed" on October 11, 1990. The EEOC notified the Commission of its receipt of Chavana's complaint by a form titled "Charge Transmittal" which was received by the Commission on October 24, 1990. Stanley Stores contends that Chavana's complaint to the EEOC was not filed within the 180 days required by the state statute.

On August 22, 1991, Chavana's attorney submitted to the EEOC investigator a written "Request for Withdrawal of Charge of Discrimination" because a lawsuit had been

---

**1.** 42 U.S.C.A. § 2000e–2(a) (1994).

**2.** 29 U.S.C.A. § 631 (1985 & Pamph.1995).

filed in state district court. On August 30, 1991, the EEOC director sent an acknowledgement and approval of the withdrawal. The lawsuit was filed April 12, 1991, in state court based solely upon the CHRA.

Chavana responded that though not reflected in the certified EEOC record, he had written a letter dated June 21, 1990, complaining about his discriminatory employment termination to the EEOC which he said that he mailed on June 21, 1990. At the trial court's hearing addressing jurisdiction, Chavana entered in evidence a copy of the letter that his wife prepared, and that he had signed and sent to the EEOC. Chavana contends that this letter constituted a timely complaint under the CHRA limitations provision. Chavana testified that he made a copy of the letter to keep for himself and then mailed the letter. He explained that he did not send the letter by certified mail return receipt requested. Chavana's letter contained his name, address, date of birth, social security number, name of the company he worked for and its address, and the name of the owner of the company and his telephone number. The letter reads as follows:

> I was working at Stanley stores in Port Lavaca, Texas. It was 3:00 in the afternoon when John Cano (mrkt. supervisor) came and fired me. I asked him why and he said it was not working out and, that they no longer needed me. I was making $10.00 an hour. I was a meat cutter. They then hired somebody younger and for less pay from the same company. [illegible name] was less experience than me. I worked for the company 15 years. The ad I'm sending is from a newspaper from Victoria, Texas. They have 2 stores in Pt. Lavaca. I worked at both stores in Port Lavaca. I am now 50 years old. I can not get a job as easy as a 20 year old.

Chavana also entered in evidence a letter dated October 5, 1990, addressed to him from the EEOC which also did not appear in the certified record. Accompanying the EEOC's letter was EEOC's form 5, Charge of Discrimination. The EEOC letter to Chavana stated that it had filled in the form with the information from "your correspondence." Chavana asserts that his June letter and the letter from the EEOC are sufficient evidence to support the trial court's implied finding that he filed his complaint timely and that the court had jurisdiction over his case. Chavana asserts that from 1) his and his wife's testimony that they had prepared and mailed a letter to the EEOC in June 1990, 2) the copy of the letter drafted and mailed, 3) the October 5 letter from the EEOC to Chavana, and 4) the prepared charge accompanying the October 5 letter from the EEOC containing language from his June letter, the trial court could draw a reasonable inference that the filing of his complaint was timely for purposes of jurisdiction in the state court action. Stanley Stores contends that because there exists no evidence of receipt of the June 21 letter by the EEOC that the EEOC filing dated October 11 cannot relate back to the June letter.

The relation back doctrine was applied in a gender discrimination action where jurisdiction was at issue in *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371 (Tex.1993). I.P. Petroleum terminated Hennigan's employment on August 12, 1989. Hennigan filed an unverified complaint two days later with the Texas Employment Commission. TEC forwarded the complaint to the Commission on August 21. On March 12, 1990, Hennigan filed an amended sworn complaint with the Commission. The *Hennigan* court, relying on provisions in the Texas Administrative Code, held that the amended complaint related back to the date the original complaint was filed with the Commission. *Hennigan*, 858 S.W.2d at 373 (citing 40 TEX.ADMIN.CODE § 327.1(g) (Vernon Supp.1993). The *Hennigan* court held that because a verified complaint filed outside of the 180–day time limit relates back to, and satisfies any deficiencies in an unverified questionnaire filed within the 180–day limit, the 180–day jurisdictional requirement of section 6.01(a) was met. *Id.*; *see also Brammer v. Martinaire, Inc.*, 838 S.W.2d 844 (Tex.App.—Amarillo 1992, no writ).

 Letters, notices, or other communications, when properly addressed, stamped, and mailed, are presumed to have been delivered to the addressee in the due course of the mails. *Cliff v. Huggins*, 724 S.W.2d 778,

780 (Tex.1987); *Pan American Bank of Brownsville v. Nowland,* 650 S.W.2d 879, 884 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). It is necessary that the mailing of the letter be proved, and this may be by direct evidence. *Nowland,* 650 S.W.2d at 884. The presumption may be rebutted by an offer of proof of nonreceipt. *Cliff,* 724 S.W.2d at 780. When rebutted, the facts upon which the presumption was based remain and may serve as the basis from which any reasonable inferences may be drawn by the trier of fact, in this case, the trial court. *Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29, 35 (Tex.App.—Corpus Christi 1984), *affirmed as modified,* 690 S.W.2d 239 (Tex.1985). Thus, due receipt generally becomes a fact issue for the factfinder. *See Pitts v. State,* 736 S.W.2d 191, 192 (Tex. App.—Waco 1987, no writ); *Gulf Ins. Co. v. Cherry,* 704 S.W.2d 459, 461 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

We conclude that the relation back doctrine applies in this case. Chavana testified that he mailed the June 21 letter on that day to the EEOC. The evidence rebutting receipt is that the letter is not in the certified file accompanying his case. We note that the EEOC's letter to Chavana of October 5, which referred to Chavana's "correspondence" and included language directly from his June 21 letter, was also not in the certified file. We conclude that the trial court, sitting as the fact finder, could have found that Chavana timely complained to the Commission. The October 11 complaint relates back to Chavana's letter of June 21. We overrule points one and two.

## Legal and Factual Sufficiency

 By point of error three, Stanley Stores contends that no evidence exists to support the trial court's finding of intentional age discrimination against Chavana by Stanley Stores. By point of error four, Stanley Stores contends that the trial court's finding of intentional age discrimination is against the great weight and preponderance of the evidence. Chavana responds that sufficient evidence exists such that the trial court properly concluded that Chavana's employment was terminated because of his age.

 When considering the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there exists any evidence to support the finding, the point will be overruled and the finding upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). When considering the factual sufficiency of the evidence pursuant to a challenge that the finding is against the great weight and preponderance of the evidence, we review the entire record to determine if there is some evidence to support the finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1989). If the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence supports its nonexistence, we will sustain the point of error. This court, however, is not a fact finder; we do not pass judgment upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even when there exists conflicting testimony which could support a different conclusion. *Id.*

 In an age discrimination case, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Adams v. Valley Fed. Credit Union,* 848 S.W.2d 182, 186 (Tex. App.—Corpus Christi 1992, writ denied) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 251, 101 S.Ct. 1089, 1092–93, 67 L.Ed.2d 207 (1981)). The Fifth Circuit set forth, and this court adopted, the elements of a prima facie case for age discrimination, as follows: 1) the plaintiff must prove that he was discharged, 2) he was qualified for the position, 3) he was in the protected class at the time of his discharge, and 4) he was replaced by someone outside the protected class, or by someone younger or otherwise show that he was discharged because of age. *Adams,* 848 S.W.2d at 186–87 (citing *Bienkowski v. American Airlines,* 851 F.2d 1503, 1505 (5th Cir.1988)). The qualification element refers to whether the plaintiff suffered a physical disability or loss

of a necessary license or some other occurrence that rendered him unfit for the position for which he was hired. *Id.; see Adams,* 848 S.W.2d at 188.

■ If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for the employee's discharge. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* The ultimate burden of persuading the trier of fact remains at all times with the plaintiff. *Id.*

We begin our review by determining whether Chavana presented a prima facie case of age discrimination. Undisputed is the fact that Chavana's employment was terminated and that Chavana was a member of a protected age group. Additionally, the qualification element is also not at issue because there exists no licensing problem or physical disability that would keep Chavana from performing his job. At issue is the prima facie element of whether Chavana was replaced by a person not within the protected class or by someone younger or otherwise show that he was discharged because of his age.

Chavana asserted at trial that he was a meat cutter while Stanley Stores asserted that he was a "second man/assistant manager." In reviewing the evidence, we find that Chavana's personnel file includes a payroll change notice dated 1–1–89, which indicates that Chavana was demoted from market manager to meat cutter, with a pay decrease from $12.25 per hour to $10.00 per hour. John Cano, supervisor over all of Stanley Stores' meat markets, approved the employment change. Cano testified that despite what the personnel records he prepared reflected, Chavana was actually not just a meat cutter but was a "second man" or the equivalent of an assistant market manager when his employment was terminated. The documentary evidence reflects that a few days after Stanley Stores terminated Chavana's employment, Louis Morales, a nineteen year-

old, whom Chavana asserts replaced him, was transferred to the store where Chavana had worked. Stanley Stores paid Morales half the amount of money they had paid Chavana. In reviewing the evidence at trial, the documentary evidence reveals that both Chavana and Morales were meat cutters. We conclude it is not against the great weight and preponderance of the evidence that the trial court determined that at the time Stanley Stores terminated Chavana's employment he was a meat cutter. The evidence supports the factfinder's conclusion that Chavana was replaced by someone younger and outside of the protected class. We hold that the evidence supports a prima facie case of age discrimination.

Stanley Stores' articulated reason for firing Chavana was that he was performing his job poorly. In our analysis, to sustain the finding of age discrimination, the evidence must reflect that Chavana showed that this reason was a pretext for intentional age discrimination.

Initially, we note that Stanley Stores had a policy in place for counselling employees on poor performance. The disciplinary procedure admitted at trial included the following:

Normally when employees are not following instructions, or when work performance fails to meet minimum job requirements, or any of the requirements set forth in this booklet are violated, the employee will be advised by their department manager or store manager. If, after being counseled by the department manager or store manager, there is a second offense, the employee will be advised in writing that their performance does not meet job standards. If a third offense is committed, the employee may be dismissed.

Chavana's personnel file contained no counselling notices. The evidence shows that Chavana's supervisor had talked with him about his performance once and that the company's meat market supervisor talked with him as well. Stanley Stores asserted that it did not treat its management personnel under the above policy. However, the record reflects that Chavana had been demoted from market manager to a meat cutter

position, which the evidence reflects, was not a management position. Additionally, the record reflects that many management employees were "written up" for poor performance.

Stanley Stores' form by which it documents Chavana's employment termination reflects that he was dismissed because of a reduction of force. Though the form has space provided specifically to address "the details of separation," nothing was written in the space. Additionally, the form reflects nothing about Chavana's purported poor performance. Chavana introduced numerous documents showing that Stanley Stores had regularly completed the forms and had followed its procedures of detailing the reasons for terminating employment. Stanley Stores' excuse for the absence of an explanation on Chavana's termination form rests with the vice president. Merely in deference to Chavana's length of service, Stanley Stores asserts that the vice president did not want Chavana to have any adverse references in his personnel file, nor did he wish to deprive Chavana of unemployment benefits.

Other evidence, nonetheless, existed in the record from which the trial court as fact finder could reasonably infer age discrimination. The testimony showed that after fourteen years of employment with Stanley Stores Chavana was making $10.00 per hour. This was compared to the market manager whose salary was $11.25 an hour and others in the meat market making $4.20 and $3.60 per hour. Chavana's salary as reflected by his personnel records was a result of his length of employment with Stanley Stores. Stanley Stores' vice president of operations also testified about salary percentages set for each store. He explained that salary quotas existed for each department and when the salaries ran over the allotted percentages, adjustments had to be made.

After reviewing the evidence, we conclude that sufficient evidence exists to support the trial court's finding of age discrimination. We overrule points three and four.

### Front Pay Award

■ By points five and six, Stanley Stores contends that the trial court erred in awarding Chavana "front pay" in the lump sum of $106,838.00. Front pay has been characterized as an extension of a defendant's back pay liability until the employer makes an offer of reinstatement. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 383 (5th Cir.1988). Stanley Stores complains that in this case the court's order of front pay as a lump sum without an order of reinstatement is not proper because the order is substantively an award of future earnings. Future earnings are not specifically authorized by the CHRA. Stanley Stores also contends that the trial court abused its discretion because there exists no evidence or insufficient evidence that Chavana could be reinstated to his former position and because the trial court failed to specify an ending date for the front pay.

■ CHRA provides for judicial action and relief for some damages. Tex.Rev.Civ. Stat.Ann. art. 5221k, § 7.01(c) & (d) (Vernon 1987) (currently codified at Tex.Lab.Code Ann. § 21.258 (Vernon Pamph.1995)). If the court finds an unlawful employment practice, the court may, among other things, order such additional equitable relief as may be appropriate. Tex.Rev.Civ.Stat.Ann. art. 5521k § 7.01(c) (Vernon 1987) (currently codified at Tex.Lab.Code Ann. § 21.258 (Vernon Pamph.1995)). Section 7.01(d) lists several types of equitable relief which a trial court may award upon finding employment discrimination.[3] This list however does not specifically provide for front pay. Chavana argues that though CHRA does not literally mention front pay, the CHRA does allow for the court to order appropriate equitable relief which, Chavana argues in this case, is the character of the court's order of front pay. Tex.Rev.Civ.Stat.Ann. art. 5221k, § 7.01(d)

---

3. CHRA provides specifically that a trial court may order equitable relief in the nature of 1) an injunction; 2) the hiring or reinstatement of the employee, with or without back pay; 3) the upgrading of employees with or without pay; 4) the admission or restoration of union membership; 5) the admission to certain programs; and 6) the payment of court costs. Tex.Rev.Civ.Stat.Ann. art. 5221k, § 7.01(d) (Vernon 1987) (currently codified at Tex.Lab.Code Ann. § 21.258 (Vernon Pamph.1995)).

(Vernon 1987) (currently codified at Tex.Lab. Code Ann. § 21.258 (Vernon Pamph.1995)).

When interpreting the CHRA it is proper to look to how federal courts have interpreted the federal acts, Title VII and the ADEA, under clauses similar to those in the Texas act. *City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ).

Title VII is an equitable statute designed only to make victims of discrimination whole. We note that federal courts interpreting Title VII and a Texas court under the CHRA have ordered employers to pay front pay to employees. As noted in *Gifford,* which awarded front pay as an equitable relief, federal courts have awarded front pay as equitable relief to Title VII claimants, even though Title VII, literally, makes no specific allowance for front pay. *Gifford,* 824 S.W.2d at 744 (citing *Carter v. Sedgwick County, Kan.,* 929 F.2d 1501, 1505 (10th Cir.1991); *Johnson,* 853 F.2d at 382). The *Gifford* court affirmed the trial court's judgment which ordered the employer to make payments of front pay of $323.60 per week, the employee's weekly salary, until he was offered reinstatement to a commensurate position. *Gifford,* 824 S.W.2d at 743–44. The weekly payments were to continue for a maximum of two years.

Stanley Stores agrees that the holding in *Gifford* follows the spirit and meaning of the federal cases addressing the front pay issue. Stanley Stores argues that in this case, however, the award of front pay is improper because the trial court did not order that Chavana be reinstated. Stanley Stores argues that in other cases ordering front pay, unlike this case, courts specify an ending date for payments and the order of front pay is not made in a lump sum.

Chavana responds that because no findings of fact and conclusions of law were filed, the court impliedly found that a lump sum monetary award was more appropriate than reinstatement. Additionally, because it was Stanley Stores' burden to request findings of fact, Chavana argues that a beginning and ending date could be impliedly based upon his expert's testimony.

Absent findings of fact or conclusions of law it is implied that the trial court made all necessary findings to support the judgment. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 276 (Tex.1979); *Cellular Mktg., Inc. v. Houston Cellular Tel. Co.,* 838 S.W.2d 331, 333 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (citing *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989)). We reverse only when implied findings necessary to support the legal theories asserted are not supported by the evidence. *See Cantu v. Harris,* 660 S.W.2d 638, 640 (Tex.App.—Corpus Christi 1983, no writ) (judgment reversed because only theory supporting judgment required finding of fact with no evidentiary support). An implied finding does not arise when the evidence establishes as a matter of law the issue to be determined. *Zac Smith & Co.,* 734 S.W.2d at 666.

At trial, Bullock, Chavana's expert, testified that he figured the amount of $106,-838.75 as front pay. He calculated the number by figuring the difference between the salary and benefits of what Chavana would have received at Stanley Stores from October 1, 1992, until his expected retirement date, his 65th birthday in 2004, compared to what he is expected to receive from his current employment. Bullock testified that this amount, though called front pay, was substantively the same amount as calculating a loss of future earnings: all that exists is a difference in terminology.

We conclude that implied findings support an order of front pay. By ordering front pay, the court impliedly ordered that Chavana be reinstated to his job with Stanley Stores. Although the court ordered front pay, it did not set forth the method of payment, whether weekly, monthly, or in a lump sum. The evidence also supports an implied finding that the ending date for front pay could be as far into the future as the time when Chavana would be retiring. Based upon the evidence, the court impliedly found that front pay would continue until July 12, 2004, the date Chavana would retire, or, until Stanley Stores extended Chavana an offer of employment in a commensurate position, whichever occurred first.

 We believe, however, that a lump sum front pay award in the amount of the total income expected until Chavana's retirement is not within the spirit of the CHRA. The trial court, therefore, should have formulated the "front pay" award specifically into weekly or monthly payments until Chavana was reinstated or until a date certain. Because the trial court did not determine whether the front pay would be paid by Stanley Stores weekly or monthly, set the amount of such periodic payment, or fix a definite date certain, we remand the front pay issue to the trial court for reformulation. Point of error five is overruled. Point of error six is sustained in part.

### Back Pay Award

 By point seven, Stanley Stores challenges the sum that the court ordered it to pay as back pay to Chavana. Stanley Stores contends that the court, when awarding the sum of $33,594.70, failed to offset the award with Chavana's retirement benefits paid out after his employment was terminated.

 The trial court has discretion to award back pay as equitable relief in an age discrimination lawsuit. TEX.REV.CIV.STAT. ANN. art. 5221k, § 7.01(d)(1) (Vernon 1987) (currently codified at TEX.LAB.CODE ANN. § 21.258(b)(1) (Vernon Pamph.1995)). The CHRA states that the court shall deduct from back pay interim earnings, workers' compensation benefits, and unemployment compensation benefits. TEX.REV.CIV.STAT. ANN. art. 5221k, § 7.01(d)(1) (Vernon 1987) (currently codified at TEX.LAB.CODE ANN. § 21.258(c) (Vernon Pamph.1995)). We find no requirement that the court reduce a back pay sum by 401K benefits. Additionally, the issue of set-offs is Stanley Stores' and it presented no evidence of an amount of money, if any, that it contributed to Chavana's 401K plan. *See Johnson,* 853 F.2d at 382. We cannot, therefore, say that the trial court abused its discretion by ordering Stanley Stores to pay Chavana $33,594.70 as back pay. We overrule point seven.

### Expert Witness Fee Award

 By point of error eight, Stanley Stores challenges the trial court's order that it pay $3,000.00 as expert witness fees to Chavana. Stanley Stores contends that the fees are not recoverable because article 5221k makes no provision for such a recovery. Additionally, Stanley Stores contends that Chavana's expert's fees do not constitute court costs and asserts that there exists no agreement between the parties that it would pay for any expert's fee.

Witness fees are not mentioned under § 7.01 as appropriate equitable relief. TEX. REV.CIV.STAT.ANN. art. 5221k, § 7.01(d) (Vernon 1987) (currently codified at TEX.LAB. CODE ANN. § 21.258 (Vernon Pamph.1995)). We conclude that the trial court erred by ordering Stanley Stores to pay Chavana's expert witness fees. We, therefore, sustain point of error eight and render that appellant cannot recover expert witness fees.

Accordingly, we reverse and render that appellant not recover expert witness fees and we remand the award of front pay to the trial court for a reformulation consistent with this opinion. In all other respects, we affirm the trial court judgment.