NUMBER 13-00-275-CV

 

                              COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                       CORPUS CHRISTI
B
EDINBURG

 

                                           

HAGGAR
APPAREL COMPANY                                                APPELANT.                             

 

v.

 

 MARIA O. LEAL,                                
                                APPELLEE.   

 

 

                          On appeal from the
93rd District Court

                                  of Hidalgo
County, Texas.

 

O P I N I O N

 

        Before Chief Justice Valdez
and Justices Dorsey and Rodriguez

                              Opinion by Chief
Justice Valdez                                   








                                                               

 Maria O. Leal brought suit against Haggar Apparel
Co., her former employer, for disability discrimination, age discrimination,
and retaliatory discharge.  After trial,
the jury found in favor of Leal on her claim for disability discrimination and
awarded her $43,700 in past lost earnings and employment benefits and $8,000 in
past compensatory damages.  The trial
court entered judgment on the verdict and awarded attorney=s fees plus
prejudgment and postjudgment interest. 
Haggar appeals this judgment by five issues.  We affirm.

                                             Disability
Discrimination

Leal brought suit against Haggar under the Texas Commission on Human
Rights Act.  See Tex. Lab. Code Ann. '' 21.001 - .5566
(Vernon 1996 & Supp. 2002).  The act
prohibits an employer from discharging or otherwise discriminating against an
employee in any way based on the employee=s
disability.  Tex. Lab. Code Ann. ' 21.051(a)
(Vernon 1996).  An individual may be
classified as disabled under any one of three definitions in the act:  (1) a physical or mental impairment that
substantially limits one or more of the major life activities of the
individual; (2) a record of such an impairment; or (3) being regarded as having
such an impairment.    Tex. Lab. Code Ann. '21.002(6)
(Vernon Supp. 2002).  A Amajor life
activity@ is considered
to be something akin to caring for oneself, performing manual tasks, walking,
seeing, hearing, speaking, breathing, learning, or working.  See Garcia v. Allen, 28 S.W.3d 587,
596 (Tex. App.BCorpus Christi
2000, pet. denied); Hartis v. Mason & Hanger Corp., 7 S.W.3d 700,
703 (Tex. App.BAmarillo 1999,
no pet.).  








The determination of whether an individual is disabled is
necessarily fact intensive.  Garcia,
28 S.W.3d at 596; Primeaux v. Conoco, Inc., 961 S.W.2d 401, 404 (Tex.
App.BHouston [1st
Dist.] 1997, no writ).  In determining
whether an individual is disabled in a major life activity, the jury considers
(1) the nature and severity of the impairment, (2) the duration or expected
duration of the impairment, and (3) the permanent or long-term impact, or the
expected permanent or long-term impact, resulting from the impairment.  Garcia, 28 S.W.3d at 596; Norwood
v. Litwin Eng=rs &
Constructors, Inc., 962 S.W.2d 220, 224 (Tex. App.BHouston [1st Dist.] 1998, pet. denied).

When the impaired major life activity is the ability to work, the
statute requires the plaintiff to show substantial limitation by proving, at a
minimum, that the plaintiff is unable to work in a broad class of jobs.  See Sutton v. United Airlines, Inc., 527
U.S. 471, 492 (1999); Kiser v. Original, Inc., 32 S.W.3d 449, 453 (Tex.
App.BHouston [14th Dist.]
2000, no pet.); Garcia, 28 S.W.3d at 599-600.  The inability to perform a single, particular
job does not constitute a substantial limitation in the major life activity of
working.  Sutton, 527 U.S. at
491.  

With regard to the major life activity of working, the ADA regulations
explain that the term Asubstantially limits@ means:

[S]ignificantly
restricted in the ability to perform either a class of jobs or a broad range of
jobs in various classes as compared to the average person having comparable
training, skills, and abilities.  The
ability to perform a single, particular job does not constitute a substantial
limitation in the major life activity of working.

 








29
C.F.R. '1630.2(j)(3) (1996); see
Primeaux, 961 S.W.2d at 405.  Factors
to consider in determining whether an individual is substantially limited in
working include, but are not limited to: 
(1) the geographical area to which the person has reasonable access; (2)
the job from which the individual has been disqualified because of an impairment,
and the number and types of jobs utilizing similar training, knowledge, skills
or abilities, within that geographical area, from which the individual is also
disqualified because of the impairment; and (3) the number and types of other
jobs not utilizing similar training, knowledge, skills, or abilities, within
that geographical area from which the individual is also disqualified because
of the impairment.  29 C.F.R. '1630.2(j)(3).  For example, an individual who has a back
condition that prevents the individual from performing any heavy labor job
would be substantially limited in the major life activity of working because
the individual=s impairment
eliminates his or her ability to perform a class of jobs.  This is so even if the individual is able to
perform jobs in another class, for example, the class of semi-skilled
jobs.  29 C.F.R. '1630.2, App., '1630(j).

To prevail on a Arecord of disability@ claim, a plaintiff
can show that he has a history of, or has been misclassified as having a mental
or physical impairment that substantially limits one or more major life
activities.  Kiser, 32 S.W.3d at
453 (citing Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir.
2000)).  








Alternatively, an employee is also regarded as having a substantially
limiting impairment if his employer mistakenly believes the employee (1) has a
physical impairment that substantially limits one or more major life
activities, or (2) an actual, non-limiting impairment substantially limits one
or more major life activities.  Kiser,
32 S.W.3d at 453.  In both instances, it
is necessary that the employer entertain misperceptions about the
individual.  The employer must believe
either that one has a substantially limiting impairment that one does not have
or that one has a substantially limiting impairment when, in fact, the impairment
is not so limiting.  Id.

                                                Standard
of Review

In discrimination cases, Texas courts apply the McDonnell
Douglas or Burdine burden-shifting analysis established by the
United States Supreme Court.  See
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-42
(2000)(discussing McDonnell Douglas Corp. v. Green, 411 U.S. 729, 802-03
(1973), and Tex. Dep=t of
Cmty.Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)); M. D. Anderson Hosp. v.
Willrich, 28 S.W.3d 22, 24 (Tex. 2000)(per curiam); Tex. Dept. of Human
Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995).  Under this burden-shifting analysis, the
plaintiff has the initial burden of proving a prima facie case of
discrimination by a preponderance of the evidence.  Stanley Stores, Inc. v. Chavana, 909
S.W.2d 554, 559 (Tex. App.BCorpus Christi
1995, writ denied); Adams v. Valley Fed. Credit Union, 848 S.W.2d 182,
186 (Tex. App.BCorpus Christi
1992, writ denied). 








If the plaintiff succeeds in proving a prima facie case, the
burden shifts to the defendant to articulate some legitimate, nondiscriminatory
reason for the employee=s
discharge.  Stanley Stores, 909
S.W.2d at 560; Adams, 848 S.W.2d at 187-88.  If the defendant carries this burden, the
plaintiff must then prove by a preponderance of the evidence that the
legitimate reasons offered by the defendant were not its true reasons, but were
rather a pretext for discrimination.  Stanley
Stores, 909 S.W.2d at 560; Adams, 848 S.W.2d at 187-88.  Despite the shifting burden of proof, the
plaintiff at all times retains the ultimate burden of persuading the trier of
fact.  Stanley Stores, 909 S.W.2d
at 560; Adams, 848 S.W.2d at 187-88.

When, however, as here, a case has been fully tried on its
merits, we do not focus on the burden shifting scheme described above.  Rubenstein, 218 F.3d at 402; see
Prestige Ford Co. v. Gilmore, 56 S.W.3d 73, 82 n.6 (Tex. App.BHouston [14th
Dist.] 2001, no pet.).  Once the case has
been submitted to the jury, the adequacy of a party=s showing at
any particular stage of the McDonnell Douglas analysis is
unimportant.  Travis v. Bd. of Regents
of Univ. of Tex., 122 F.3d 259, 263 (5th Cir. 1997).  Instead, we inquire whether the record
contains legally and factually sufficient evidence to support the jury=s ultimate
findings.  Rutherford v. Harris Cty.,
Tex., 197 F.3d 173, 180-81 (5th Cir.1999); Smith v. Berry Co.,
165 F.3d 390, 394 (5th Cir. 1999).  Leal
must show that disability discrimination was a motivating factor in Haggar=s decision to
terminate her.  See Quantum Chem.
Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001) (applying Amotivating
factor@ as standard of
causation in TCHRA unlawful practice claims); see also Rutherford, 197
F.3d at 180-81; Travis, 112 F.3d at 263. 
Discrimination
may be proved by direct or circumstantial evidence.  Quantum Chem. Corp., 47 S.W.3d at 476;
Hartis v. Mason & Hanger Corp., 7 S.W.3d 700, 705 (Tex. App.BAmarillo 1999, no
pet.).  








                                                        Disability

In its first issue, Haggar contends that the evidence is legally
insufficient to support the jury=s finding in response
to question one that Haggar discharged or discriminated against Leal in
retaliation for her disability.  Leal
suffered from a work-related injury to her left hand which required surgery and
substantial treatment.  Haggar contended
that it terminated Leal not because of the injury, but because of excessive
absenteeism and Leal=s failure to comply
with Haggar=s policy concerning
absences from work.

In considering no evidence or legal sufficiency points of
error, we consider only the evidence and inferences from the evidence favorable
to the decision of the trier of fact, and disregard all evidence and inferences
to the contrary.  See State Farm Fire
& Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998); Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).  If more than a scintilla of evidence supports
the challenged finding, the no evidence challenge must fail.  See General Motors Corp. v. Sanchez,
997 S.W.2d 584, 588 (Tex. 1999); Mayberry v. Texas Dep=t of Agric., 948 S.W.2d
312, 316 (Tex. App.BAustin 1997,
pet. denied).

Considering only the evidence and inferences from the evidence
favorable to the decision of the trier of fact, we determine that the jury had before it
sufficient evidence to conclude that disability discrimination was a motivating
factor in Haggar=s decision to
terminate Leal.








Leal worked for Haggar from 1979 until 1994 performing
repetitive assembly-line work.  In 1983,
she was first diagnosed with carpel tunnel syndrome, which was successfully
treated with surgery.  Leal suffered a
recurrence of this condition in 1993. 
Leal underwent substantial medical treatment and was generally given
somewhat modified duties at Haggar.  In the spring and
summer, two of her treating doctors concluded that she had reached maximum
medical improvement and that she suffered a medical impairment or partial
permanent disability.  These physicians
recommended surgery or continued modified duties, in one instance Afor the rest of her
life.@  Less than three months later, Haggar
terminated Leal for alleged violations of its absenteeism policy.    

Leal testified that while she was working for Haggar, her supervisors
told her that she Awas to leave the place
for somebody else that was younger, because the ball of years on my back was
getting [too] heavy for me to be working there any more,@ that it Awas probably
arthritis, rheumatism, since [she] was too old to perform any more.@  Leal testified that she asked why she had
been terminated, and Bill Pitchford, the plant manager, told her that AIt=s too much, like this
injury, supposedly you say that you hurt and this and that, it=s going on too
long.  We cannot keep people like you
around.@  At trial, Pitchford directly testified that
he would not rehire Leal A[a]ssuming that she
could not do a ten hour workday.@  








Based on the evidence, a reasonable jury could have concluded that
Haggar believed that Leal had a substantially limiting impairment that she did
not have or that she had a substantially limiting impairment when, in fact, the
impairment was not so limiting.  Kiser,
32 S.W.3d at 453. 

Moreover, the jury had before it evidence from which it may have
inferred that Haggar=s stated reason for
terminating Leal, excessive absenteeism and failure to comply with absentee
policy, was pretextual.  Under Haggar=s policy, employees
were required to notify the company within two days in the event of an absence,
or their position was considered abandoned. 
Haggar terminated Leal following such a two-day absence, contending that
Leal failed to telephone the company regarding her absence.  However, Leal and her daughter each testified
that her daughter telephoned the company to obtain an excused absence.  

Although work-related injuries were not supposed to count as absences
under Haggar=s policy, non-workers
compensation injuries counted as absences. 
Leal testified that she incurred absences because her injury rendered
her unable to work full days, the medications used to treat her carpel tunnel
syndrome made her ill, and there were instances where she was unable to see a
doctor or obtain a pass from the company Anurse.@  Thus, the jury may have concluded that Haggar=s absenteeism policy
penalized Leal for her injury.








If the legal sufficiency standard of review allowed for the
consideration of evidence contrary to the jury=s verdict, we would agree with Haggar that
there was some evidence that it had a legitimate, non-discriminatory motive for
terminating Leal.  However, the standard
of review does not extend to such evidence, and, in any event, the jury is the
sole evaluator of the witnesses= credibility
and entitled to resolve conflicts in the testimony as it sees fit.  Silcott, 721 S.W.2d at 293; Gorges
Foodservice, Inc., 964 S.W.2d at 666. 
The jury=s verdict was
supported by more than a scintilla of evidence. 
We conclude that Leal presented legally sufficient evidence to support
the jury=s finding that
her disability was a motivating factor in Haggar=s decision to discharge her.  Haggar did not bring a factual sufficiency
challenge so our review of this matter stops upon our conclusion that there was
a scintilla of evidence to support the jury=s finding.

Citing Crown Life Ins. Co. v. Casteel, Haggar argues that the
trial court erred in submitting a broad form issue allowing for a finding of
liability if Haggar either discharged Leal or discriminated against her.  See Crown Life Ins. v. Casteel, 22
S.W.3d 378, 388 (Tex. 1999). Under Crown Life, when a single broad-form
liability question erroneously commingles legally valid and legally invalid
liability theories, the error is harmful when it cannot be determined whether
the improperly submitted theories formed the sole basis for the jury=s finding.  Id. at 389.  

In the instant case, the charge included separate questions for
retaliatory discharge, age discrimination, and disability discrimination.  The jury=s affirmative finding
of liability was made in response to the third of these issues, which  inquired AWas disability a motivating factor in HAGGAR
APPAREL COMPANY=S decision to
discharge or discriminate against MARIA O. LEAL?@








Crown Life is inapplicable to the instant situation because both termination and
discrimination were legally valid theories regardless of the state of the
evidence.  See Tex. Lab. Code Ann. '
21.051(a).  Moreover, the holding in Crown
Life does not apply unless the party seeking reversal and remand for charge
error made a timely and specific objection to the inclusion of the contested
question.  Crown Life Ins., 22
S.W.3d at 389-90.  Haggar failed to
object to the submission of this question on grounds that it allowed for two
bases of liability.  

The question at issue tracks the language of the Texas Pattern Jury
Charge for unlawful employment practices. 
See State Bar of Texas,
Texas Pattern Jury Charges - Business, Consumer, Employment PJC 107.6
(2000).  Moreover, this Court has
previously held it appropriate to submit termination and discrimination in a
single question.  See Southwestern
Bell Tel. Co. v. Garza, 58 S.W.3d 214, 226 (Tex. App.BCorpus Christi 2001,
no pet.).

We overrule Haggar=s first issue.

                                  Lost
Earnings and Employment Benefits

In its second issue, Haggar contends that the evidence is legally
insufficient to support the jury=s finding that
plaintiff suffered $43,000 in lost earnings and employment benefits in the
past.  According to the charge, the jury
awarded Leal $43,700 for Alost earnings and
employment benefits in the past between date of discharge or discriminatory
event and today.@








The trial court has discretion to award back pay as equitable
relief in an age discrimination lawsuit. 
Tex. Lab. Code Ann. '21.258(b)(1)
(Vernon 1996).  However, in awarding back
pay, the court must deduct interim earnings, workers= compensation
benefits, and unemployment compensation benefits. Tex. Lab. Code Ann. ' 21.258(c)
(Vernon 1996); Stanley Stores, Inc., 909 S.W.2d at 563.

In the instant case, Leal testified that she earned $13,000 to
$14,000 annually during her employment with Haggar, and further received health
insurance and pension benefits.  She was
terminated in August of 1994, and the matter went to trial in April of 1999.  In terms of interim earnings and other
benefits, Leal testified that she worked for a childcare company for nine
months; however, the record fails to reflect her payment.  She further worked for a home health care
service for a week and a half for $5.00 an hour.   Even considering these interim earnings, we
conclude that the evidence is legally sufficient to support the jury=s award of
$43,700 in lost earnings and employment benefits.  Over four and one-half years elapsed from
the time of Leal=s termination
and the time of trial.  During that
period of time, Leal could have earned as much as $63,000.  Taking into account Leal=s interim earnings,
the jury had discretion to award $43,700 as within the range of evidence
presented at trial  See Mayberry
v. Tex. Dept. of Agric., 948 S.W.2d 312, 317 (Tex. App.BAustin 1997,
writ denied) (jury has the discretion to award damages within the range of
evidence presented at trial, so long as a rational basis exists for its
calculation).  








Haggar also argues that the Haggar plant where Leal worked
closed in May of 1997, and accordingly, any compensatory damages recoverable
for lost pay ended as of the date the plant closed. Haggar thus argues that
damages accruing between the plant closing and trial should be remitted.   Haggar cites Ewald v. Wornick Family
Foods Corp., 878 S.W.2d 653, 661 (Tex. App.BCorpus Christi 1994, writ denied), for
this proposition.  In Ewald, the
Court held that an employee could not recover compensatory damages for the
period of time following the closure of the employer=s plant.  Id. 
Ewald is a summary judgment case, however, and is thus
distinguishable from the instant jury trial.








Haggar=s record citations
fail to establish the closing date for its facility in Weslaco.  However, even if the record were to establish
the closing date, the basic fact that Haggar closed its Weslaco facility does
not establish that Leal would have been terminated.  Leal testified that she planned on working
for Haggar until retirement age.  The
record shows that Haggar maintained multiple facilities in South Texas with
thousands of employees.  Moreover, the
record shows that Haggar transferred at least some of its employees to other
facilities.  Haggar fails to cite any
evidence showing that it would have terminated Leal rather than transfer her to
another plant.  We find that
the record evidence is insufficient to establish that Leal would have been
terminated when Haggar closed its Weslaco facility.  The jury=s award of
compensatory damages is supported by more than a scintilla of evidence.  Again, Haggar brings only a legal sufficiency
challenge to this finding, and no factual sufficiency challenge, so our review
is concluded upon a finding that there is a scintilla of evidence to support
the jury=s finding.  We therefore overrule Haggar=s second issue.


                                             Compensatory
Damages

In its third issue, Haggar contends that the evidence is legally
insufficient to support the jury=s findings that
plaintiff suffered $8,000 in past compensatory damages, Awhich may include
emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment
of life and other nonpecuniary losses.@

Plaintiffs may recover compensatory damages under the Texas
Commission on Human Rights Act (ATCHRA@).  Tex.
Lab. Code Ann. '21.2585(a)(1)
(Vernon 1996 & Supp. 2002).[1]  ACompensatory
damages@ include Afuture
pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,
loss of enjoyment of life, and other nonpecuniary losses,@  but may not include back pay, interest on
back pay, or other equitable relief authorized under section 21.258(b) of
TCHRA.  See Tex. Lab. Code Ann. '21.2585(c),(d)
(Vernon 1996).








To support an award of mental anguish damages, a plaintiff must
present either direct evidence of the nature, duration, and severity of her
mental anguish, establishing a substantial interruption in her daily
routine, or evidence of a high degree of mental pain and distress that is more
than mere worry, anxiety, vexation, embarrassment, or anger.@  Latham v. Castillo, 972 S.W.2d 66, 70
(Tex. 1998) (citing Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex.
1995)); see Stevens v. Nat=l Educ. Ctrs.,
Inc.,
11 S.W.3d 185, 185 (Tex. 2000); Norwest Mtg., Inc. v. Salinas, 999
S.W.2d 846, 862 (Tex. App.BCorpus Christi
1999, pet. denied). 

In the instant case, Leal referred to her treatment by Haggar as Ahumiliation.@  She testified that Athe way I was seemed
like the whole world had ended for me,@ and that she Agot very depressed.@   According to Leal, AI felt real B I just B mentally and
physically I couldn=t function right.  I was, well, real angry. . . .@  She testified that her feelings affected her
relationship with her children and her husband, and that she Ajust wanted to be left
alone,@ and Aanything they did was wrong.@  Leal further testified that her termination
caused her to suffer insomnia.  








The jury=s finding that
Leal suffered mental anguish is supported by more than a scintilla of
evidence.  See, e.g., Southwestern
Bell Tel. Co., 58 S.W.3d at 236 (evidence of anger, depression, financial
concerns, and negative impact on familial relations sufficient to support award
for mental anguish).  Moreover, the jury
may or may not have awarded the full amount for mental anguish, or may have
awarded some amounts for pain and suffering, inconvenience, loss of enjoyment
of life, or other nonpecuniary losses.  A
challenge to a multi-element damages award should address all of the elements
and show that the evidence is insufficient to support the damages award
considering all of the elements.  Price
v. Short, 931 S.W.2d 677, 688 (Tex. App.BDallas 1996, no writ); Greater Houston
Transp. Co. v. Zrubeck, 850 S.W.2d 579, 589 (Tex. App.BCorpus Christi
1993, writ denied). While Haggar argues that there was no evidence of mental
anguish, Haggar does not address evidence pertaining to other nonpecuniary
damages.  It would therefore be
inappropriate for this Court to further analyze Haggar=s challenge
regarding Leal=s compensatory
damages because this would entail speculation about how the jury divided its
award among the various elements comprising compensatory damages.  See Thomas v. Oldham, 895 S.W.2d 352,
359-60 (Tex. 1995); Hernandez v. Am. Appliance Mfg. Corp., 827 S.W.2d 383,
389 (Tex. App.‑‑Corpus Christi 1992, writ denied).

We overrule Haggar=s third issue.

                                                   Attorney=s Fees

In its fourth issue, Haggar alleges that the trial court reversibly
erred in allowing Leal to put on evidence of her attorney=s fees after the jury
verdict was received. Haggar first argues that Leal should not prevail on her
disability claim as a matter of law, and is, therefore, ineligible for attorney=s fees because she was
not the Aprevailing party.@  

In a proceeding under TCHRA, Aa court may allow the
prevailing party . . . a reasonable attorney=s fee as part of the costs.@  Tex.
Lab. Code Ann. '21.259 (Vernon
1996).  Because the Court has determined
that Leal submitted sufficient evidence to support the verdict of disability
discrimination, Leal is a prevailing party under the act.  Cf., Cox & Smith Inc. v. Cook, 974
S.W.2d 217, 227 (Tex. App.BSan Antonio 1998, pet.
denied) (reversing award of attorney=s fees where evidence
of retaliatory discharge was legally and factually insufficient). 








Haggar next argues that the issue of attorney=s fees is a question
of fact to be submitted to the jury; therefore, Leal waived her claim to
attorney=s fees by not
submitting this issue to the jury. 
However, the trial court is the proper authority to determine and award
costs, including attorney=s fees, in an action
under TCHRA.  Gorges, 964 S.W.2d
at 673; Borg-Warner Protective Servs. Corp. v. Flores, 955 S.W.2d 861,
870 (Tex. App.BCorpus Christi 1997,
no pet.).

Haggar=s fourth issue is
overruled.

                                    Legal
Sufficiency of Attorney=s Fees

  In its fifth issue, Haggar
contends that the evidence is legally insufficient to support the award of
$158,520 in attorney=s fees, or
alternatively, is excessive as a matter of law. 
Specifically, Haggar contends that (1) Leal failed to provide sufficient
proof and detail to justify the amount awarded, (2) the application of Aenhancement@ factors under a
lodestar calculation was improper, and moreover, failed to justify the amount
awarded, and (3) the court awarded Leal all of her incurred attorney=s fees rather than
requiring her to either segregate her attorneys= fees incurred in prosecuting the successful
claim from those incurred in prosecuting her unsuccessful claims, or to
discount her attorney=s fees in light of the
prevailing and non-prevailing claims.

We review a court-ordered award of attorney=s fees for abuse of
discretion.  Crouch v. Tenneco,
853 S.W.2d 643, 646 (Tex. App.BWaco 1993, writ
denied); Dillard Dep=t Stores, Inc. v.
Gonzales,
No. 08-00-111-CV, 2002 Tex. App. LEXIS 1706, *33 (El Paso March 7, 2002 no pet.
h .).













In the instant case, the attorney=s fees were determined
according to a Alodestar@ calculation.  The lodestar method is appropriate in
calculating attorney=s fees in employment
discrimination cases.  Gorges, 964
S.W.2d at 673; Borg-Warner Protective Servs. Corp., 955 S.W.2d at
870.  Under this method, the court must
first determine the number of hours reasonably spent by counsel on the matter,
then multiply those hours by an hourly rate the court deems reasonable for
similarly complex, non-contingent work.  Borg-Warner,
955 S.W.2d at 870; see Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 960
(Tex. 1996) (discussing lodestar award of attorney=s fees in context of
class actions).  The resulting lodestar
figure may then be adjusted upward or downward, taking into consideration
certain factors known as multipliers, such as the complexity of the case, skill
of the attorney, and contingent nature of the fee.  Borg-Warner, 955 S.W.2d at 870. The El
Paso court of appeals has recently adopted the Johnson factors in
conducting this analysis.  See Dillard
Dept. Stores, Inc., 2002 Tex. App. LEXIS 1706, at *33-34 (citing Johnson
v. Georgia Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).  These factors include (1) the time and labor
required, (2) the novelty and difficulty of the questions, (3) the level of
skill required, (4) the effect on other employment by the attorney, (5) the
customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
imposed by the client or the circumstances, (8) the amount involved and the
results obtained, (9) the experience, reputation, and ability of the attorney,
(10) the undesirability of the case, (11) the nature and length of the attorney=s relationship with
the client, and (12) awards in similar cases. 
See id.  If some of these
factors are accounted for the lodestar amount, they should not be considered
when making adjustments.  Id.

Aaron Pena testified that he spent 39 hours at an hourly rate of
$200.00, comprising $7,800.00.  Two other
attorneys working on the case spent 475.50 hours at an hourly rate of $150.00,
comprising $71,325.00.  The paralegal
staff spent Ain excess@ of 300 hours at
$50.00 hourly, comprising $15,000.00. 
Thus, the total fees expended on the instant suit comprised
$94,125.00.  Leal further requested that
fees be enhanced by a multiplier of 2.0, for a total of $188,250.00.  The judgment awarded Leal $158,250.00, or
$30,000.00  less than the total amount of
attorney=s fees sought by
Leal.  

  Haggar first contends that
Leal failed to provide sufficient proof and detail to justify the amount of
attorney=s fees awarded.  Haggar argues that Leal failed to show  Abilling judgment,@ provided
insufficiently detailed entries regarding attorney and paralegal time, and
failed to correlate the job performed to the fees due.  According to Haggar, the bills failed to show
Awrite offs,@ many of the entries
fail to indicate who performed the tasks, and many of the entries lack
sufficient detail, such as Atrial preparation.@








As noted previously, Aaron Pena, Jr. testified regarding the specific
amounts of time that he, his associate attorneys, and his paralegal staff spent
on the case, differentiating the amount billed by levels of expertise.  Further, Pena produced his attorney=s fees statement.  The statement is thirteen pages long, and
spans a period of time from 1994 to 1999. 
The statement provides the date of service, a brief description of the
task accomplished, and the amount of time spent on the task.  Pena testified that the statement provided Aaccurate,
contemporaneously made entries of attorney fee hours expended in this cause,@ and Areflects the date,
purpose and hours for representation of the plaintiff.@  According to Pena, the statement was a record
made in the regular course of his business made at or near the time or
reasonably soon thereafter.  Pena
testified that the work performed was reasonable and necessary.

The documentary and testimonial evidence substantiating Leal=s attorney=s fees was
sufficiently detailed. 








Haggar next argues that application of Aenhancement@ factors under a
lodestar calculation was improper, and moreover, failed to justify the amount
awarded.  As noted previously, the
lodestar method is appropriate in calculating attorney=s fees in employment
discrimination cases.  Gorges, 964
S.W.2d at 673; Borg-Warner Protective Servs. Corp., 955 S.W.2d at
870.  The instant case was complex,
involving several theories of recovery and a great deal of evidence.  The record reveals that the parties engaged
in substantial discovery and held numerous pretrial hearings.  Pretrial hearings and the trial itself lasted
more than two and one half weeks, and included testimony from more than twenty
witnesses.  Pena testified regarding his
expertise in employment law cases, and that the hourly fees charged were
reasonable and customary.  Pena testified
that he had a contingent fee contract with Leal.  Pena further testified about the structural
problems inherent in representing plaintiffs in employment law cases and the
economic burdens inherent in such cases. 


We conclude that the trial court did not abuse its discretion in
awarding attorney=s fees.  Although the amount awarded exceeded the
amount recovered by Leal, this factor alone is not dispositive, and a review of
the entirety of the factors governing the award of attorney=s fees could have
allowed the trial court to enhance the lodestar amount of attorney=s fees.  See Wal-Mart Stores, Inc. v. Itz, 21
S.W.3d 456, 484 (Tex. App.BAustin 2000, pet.
denied).








Finally, Haggar complains that the trial court awarded Leal all of her
incurred attorney=s fees rather than
requiring her to either segregate the fees incurred in prosecuting the
successful claim from those incurred in prosecuting the  unsuccessful claims, or to discount her
attorney=s fees in light of the
prevailing and non-prevailing claims.  As
an initial matter, we note that Haggar has provided the court with only one
citation to an unpublished case to support its argument that Leal was required
to segregate her attorney=s fees among
successful and unsuccessful claims.  
Generally, a party seeking an award of attorney=s fees must show that
the fees were incurred on a claim that allows recovery of such fees, and thus,
is ordinarily required to segregate fees incurred on claims allowing recovery
of such fees from those that do not.  Stewart
Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); Stewart Title
Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991).  However, when the claims are Adependent upon the
same set of facts or circumstances and are thus intertwined to the point of
being inseparable, the party suing for attorney=s fees may recover the entire amount covering all
claims.@  Aiello, 941 S.W.2d at 73; Grace v.
Duke, 54 S.W.3d 338, 345 (Tex. App.BAustin 2001, pet.
denied).  When the issues are integrally
related to the claims upon which recovery of attorney=s fees is based, full
recovery of attorney=s fees should be
allowed, even if some of the issues are also related to other matters.  See Aiello, 941 S.W.2d at 73.  

In the instant case, the issues raised in Leal=s various claims stem
from the same set of facts and circumstances. 
After reviewing the record, we conclude the trial court had a sufficient
basis to conclude that the issues in each claim were so intertwined that
segregation would have been impracticable. 
See World Help v. Leisure Lifestyles, Inc., 977 S.W.2d 662, 684
(Tex. App.BFort Worth 1998, pet.
denied).

With regard to Haggar=s suggested Adiscount@ of the attorney=s fees given the fact
that Leal failed to succeed on all claims against Haggar, we note that the
success or failure of claims is merely one of the factors affecting the
lodestar figure itself.  See  Borg-Warner, 955 S.W.2d at 870.  

We overrule Haggar=s fifth issue.  Having overruled each of Haggar=s issues on appeal,
the judgment of the trial court is affirmed.

 

ROGELIO
VALDEZ

Chief
Justice

Publish.

Tex. R. App. P. 47.3(b).

 

Opinion
delivered and filed

this7th day of
November, 2002.








 

 











[1]This
section of the TCHRA was amended in 1999; however, the 1999 amendments do not
affect section 21.2585 as applied to the instant case.  See Tex.
Lab. Code Ann. ' 21.2585 and historical note (Vernon Supp.
2002).