NUMBER 13-07-00082-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


LORENZO GOMEZ, Appellant,


v.



VERTEX AEROSPACE, LLC, THE 

BOEING COMPANY, AND 

MCDONNELL DOUGLAS CORPORATION, Appellees.

 




On appeal from the 105th District Court of Kleberg County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza



 Appellant, Lorenzo Gomez, challenges the trial court's summary judgment in favor
of appellees, Vertex Aerospace, LLC ("Vertex"), The Boeing Company ("Boeing"), and
McDonnell Douglas Corporation ("McDonnell Douglas"). Gomez sued appellees, his
former employers, alleging employment discrimination. The trial court granted summary
judgment dismissing all of Gomez's claims against all defendants. On appeal, Gomez
contends that: (1) he filed a timely and sufficient charge of discrimination; (2) the trial court
erred in granting summary judgment on all of his claims against Vertex; and (3) the trial
court erred in granting summary judgment on all of his claims against Boeing. We affirm.

I. Background

 Gomez was hired in June of 1987 as an aircraft corrosion control inspector at Naval
Air Station Kingsville ("NAS Kingsville"). Lockheed Support Systems ("Lockheed") was the
civilian contractor in charge of performing aircraft maintenance and other functions at NAS
Kingsville until 1990, when it lost its contract to Grumman Technical Services ("Grumman"). 
Gomez worked first for Lockheed as an aircraft corrosion control inspector, then for
Grumman as an aviation ordnance corrosion inspector when Grumman took over as the
contractor. Later, when Grumman lost its contract to UNC Technical Services ("UNC"),
Grumman laid off Gomez and UNC hired Gomez to perform the same job.

 In April 1992, Gomez was hired as an ordnance mechanic by McDonnell Douglas,
which had contracted to manufacture a new training aircraft, the T45, at NAS Kingsville. 
Boeing later acquired McDonnell Douglas, and Gomez then became a Boeing employee.

 Beginning in 1998, Gomez filed a series of workers' compensation claims for back
injuries he claimed to have suffered while on the job. Because of the injuries, Gomez was
subjected to lifting restrictions and reduced hours. By August 1, 2003, Gomez's physician
had cleared him to work eight hours per day, six days per week, with a lifting restriction of
sixty pounds. In a grievance filed with his union, Gomez claimed that he suffered hostility
and harassment by his supervisors and co-workers as a result of these restrictions.

 Like Lockheed, Grumman, and UNC before it, Boeing eventually lost its contract. 
Vertex, formerly known as Raytheon Aerospace, assumed the contract as of October 1,
2003. On September 30, 2003, the day before Vertex assumed the contract, all Boeing
employees at NAS Kingsville were laid off. Gomez was rehired by Vertex on October 1 as
an aircraft servicer, or washer, rather than as an ordnance mechanic. As an aircraft
servicer, Gomez was required to work under and around aircraft in positions that
aggravated his back injuries. In December of 2003, an ordnance mechanic position
opened up. Gomez applied, but was told that the position required working more than
eight hours per day. Vertex notes that, unlike Boeing, it requires ordnance mechanics to
be available to work night shifts and weekends, as well as ten-hour or twelve-hour shifts. 
As part of its interview process, Vertex administered a five-question quiz to applicants for
the position; Gomez answered two of the questions incorrectly whereas the successful
applicant answered all five correctly. According to Gomez, the position went instead to a
"white, younger, and less qualified" applicant. Having been denied the promotion to
ordnance mechanic, Gomez resigned on January 12, 2004. He later obtained employment
at the Corpus Christi Army Depot.

 On May 27, 2004, Gomez filed a Charge of Discrimination ("Charge") with the Equal
Employment Opportunity Commission ("EEOC"), claiming that both Vertex and Boeing
discriminated against him on the basis of his national origin, age, (1) and disability. 
Specifically, Gomez stated in the Charge that:

I was denied training that others were allowed to attend by McDonnell
Douglas/Boeing. I was then chosen for layoff on September 30, 2003.


I was placed in a lower-paying, lower skilled position by Vertex, beginning
October 2003. As a result, I was forced to quit my job on January 23, 2004.


I feel I have been discriminated against because of my national origin,
Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended;
my age, d.o.b. July 13, 1960, in violation of the Age Discrimination
Employment Act of 1967, as amended, and Title I, the Americans with
Disabilities Act of 1990, as amended.


 Gomez received a right to sue letter on February 28, 2005. See Tex. Lab. Code
Ann. § 21.252 (Vernon 2006) (stating that a complainant who receives notice that a
discrimination complaint is not dismissed or resolved is entitled to request a written notice
of the complainant's right to file a civil action). He then filed suit on April 28, 2005, against
Boeing and Vertex, alleging violations of the Texas Commission on Human Rights Act
("TCHRA"), negligence, and intentional infliction of emotional distress. In his original
petition, Gomez made the following specific allegations of discrimination and retaliation:

Mr. Gomez was given notice that he would be terminated effective
September 30, 2003. As a result of such notice, he was denied training that
other persons who were similarly situated were given to advance their job
skills and employability with the Defendants.


 . . . .


Mr. Gomez was discriminated in his termination from Boeing in [sic] or about
October 1, 2003, because of his age (44), national origin (Hispanic),
perceived disability (back), and the fact that he had complained about
preceding acts of discrimination through the Union and his Union
membership.


 . . . .


Vertex . . . placed Mr. Gomez in a lower-paying and lower-skilled position, as
an Aircraft Servicer, a demotion undeserved by any fault on the part of Mr.
Gomez.


 . . . .


Mr. Gomez was required to work 8.5 hours in each workday, when others
were required to work the usual 8.0 hours in each workday.


 . . . . 


Mr. Gomez complained of his treatment to the Union. He was retaliated
against for his Union complaint and membership when he was terminated.


 . . . .


Mr. Gomez applied for the position of Ordinance [sic] Mechanic [with Vertex]. 
Vertex gave Mr. Gomez a position, but did not offer him the same position
in Ordinance [sic] in which he had 9.5 years of experience. Vertex increased
Mr. Gomez's workload and put him in a position where his physical
restrictions and limitations - a back injury - affected his ability to perform his
duties.


 . . . .


Mr. Gomez was demoted to Aircraft Servicer (Washer).


 . . . .


Vertex discriminated in its hiring practices in that the person who got the
position was less qualified, Anglo, and younger.


 . . . .


During his employment, Mr. Gomez made complaints about his assignment
through the Union, as was customary. Because of his complaints, Vertex
retaliated against Mr. Gomez by precluding him from training, demotion, and
ultimately by constructive discharge.


 . . . .


Mr. Gomez was constructively discharged on or about January 23, 2004,
from his position as Aircraft Servicer.


Gomez sought damages for "back pay, front pay, lost earnings, lost wages, diminished
earnings [sic] capacity, physical and mental pain and anguish [and] loss of benefits," as
well as exemplary damages and attorney's fees.

 Vertex filed a motion for traditional summary judgment on April 4, 2006, contending
that: (1) Gomez's claims of discrimination under the TCHRA were procedurally barred and
substantively deficient; (2) his claim of negligence was barred by the Texas Workers'
Compensation Act ("TWCA"); and (3) his intentional infliction of emotional distress claim
was barred because it was not independent of his discrimination claims. On April 17, 2006,
Boeing filed its own motion for summary judgment which incorporated both traditional and
no-evidence grounds. Specifically, Boeing argued that it was entitled to judgment as a
matter of law on Gomez's discrimination claims because: (1) Gomez admitted that his
layoff was not discriminatory; (2) the denial of training as alleged in the Charge did not
cause Gomez to suffer any adverse employment action; (3) Gomez admitted that Boeing
was not responsible for Vertex's actions; and (4) even if Boeing was responsible for
Vertex's actions, Gomez produced no evidence showing that Vertex discriminated against
him. Boeing also alleged that Gomez's retaliation claims must fail because (1) Gomez did
not exhaust his administrative remedies, and (2) he did not engage in any of the"protected
activities" enumerated in the Texas Labor Code. See id. § 22.055(1)-(4) (Vernon 2006). 
Finally, Boeing, like Vertex, claimed that Gomez's negligence and intentional infliction of
emotional distress claims were groundless.

 Gomez filed his responses to the summary judgment motions of both Vertex and
Boeing on May 12, 2006. In his response to Vertex's motion, Gomez contended that his
TCHRA claims were not procedurally barred and that neither the TCHRA nor common-law
negligence were pre-empted by the TWCA. In his response to Boeing's motion, Gomez
claimed that he did not admit that his layoff was not discriminatory and that there were
questions of material fact as to his claims of discrimination, retaliation, and negligence. (2)

 On October 20, 2006, the trial court granted Vertex's and Boeing's motions for
summary judgment. The order stated specifically that "[t]he Court is of the opinion that the
Motions [for summary judgment] are each well-taken in all respects and should be and
hereby are GRANTED in their entirety." The trial court dismissed all of Gomez's claims
and assessed costs against Gomez. Gomez filed a motion for new trial on November 17,
2006, which was overruled by operation of law. See Tex. R. Civ. P. 329b(c). This appeal
followed.

II. Standard of Review

 The function of summary judgment is to eliminate patently unmeritorious claims and
defenses, not to deprive litigants of the right to a trial by jury. Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004); Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex.
App.-Corpus Christi 2003, no pet.). We review a trial court's grant or denial of a traditional
motion for summary judgment under a de novo standard of review. Creditwatch, Inc. v.
Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing Schneider Nat'l Carriers, Inc. v.
Bates, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz, 105 S.W.3d at 345.

 To obtain relief via a traditional motion for summary judgment, the movant must
establish that no material fact issue exists and that it is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi 2002, pet.
denied). After the movant produces evidence sufficient to show it is entitled to summary
judgment, the non-movant must then present evidence raising a fact issue. See Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed fact
issue that precludes summary judgment, evidence favorable to the non-movant will be
taken as true. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the
movant, however, will not be considered unless it is uncontroverted. Great Am. Reserve
Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Moreover,
every reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Grinnell, 951 S.W.2d at 425 (citing Nixon, 690 S.W.2d at 549).

 For a no-evidence summary judgment motion to be successful, the movant must
assert that no evidence exists as to one or more of the essential elements of the non-movant's claims upon which he would have the burden of proof at trial. See Tex. R. Civ.
P. 166a(i); Holstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.-Austin 2000, no pet.). When
responding to a no-evidence motion, the non-movant is only required to present evidence
that raises a genuine issue of material fact on the challenged elements. See AMS Constr.
Co., Inc. v. Warm Springs Rehab. Found., Inc., 94 S.W.3d 152, 159 (Tex. App.-Corpus
Christi 2002, no pet.) (citing McCombs v. Children's Med. Ctr., 1 S.W.3d 256, 258 (Tex.
App.-Texarkana 1999, pet. denied)). The non-movant must produce more than a scintilla
of probative evidence to raise an issue of material fact. Oasis Oil Corp. v. Koch Ref. Co.,
60 S.W.3d 248, 252 (Tex. App.-Corpus Christi 2001, pet. denied). More than a scintilla
of evidence exists when the evidence rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).

 If the trial court's order granting summary judgment does not specify the ground or
grounds relied upon for the ruling, as is the case here, we will affirm the judgment on
appeal if any of the theories advanced by the movant are meritorious. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001) (quoting Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989)).

III. Applicable Law

 The Legislature enacted the TCHRA in 1983 for the purpose of correlating state law
with federal law in employment discrimination cases. Tex. Lab. Code Ann. § 21.001
(Vernon 2006); see NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999). The
TCHRA, mirroring Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e-2, the
Age Discrimination in Employment Act of 1967, see 29 U.S.C. § 623, and the Americans
with Disabilities Act of 1990, see 42 U.S.C. § 12112, (3) prohibits an employer from
discharging or in any other way discriminating against an employee because of the
employee's race, color, disability, religion, sex, national origin, or age. See Tex. Lab. Code
Ann. § 21.051 (Vernon 2006).

 Before suing an employer in state court, an employee must exhaust his
administrative remedies by first filing a complaint with the Texas Commission on Human
Rights ("TCHR") (4) within 180 days of the alleged discriminatory act. (5) Schroeder v. Tex. Iron
Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991); see Tex. Lab. Code Ann. § 21.202(a)
(Vernon 2006). In order to comply with the exhaustion requirement, an employee must: 
(1) file a complaint with the TCHR within 180 days of the alleged discriminatory act; (2)
allow the TCHR to dismiss the complaint or resolve the complaint within 180 days before
filing suit; and (3) file suit no later than two years after the complaint is filed. See Tex. Lab.
Code Ann. §§ 21.201-.202, 21.208, 21.256 (Vernon 2006).

 A lawsuit filed pursuant to the TCHRA is then limited to claims made in the
discrimination complaint as well as any "factually related claims that could reasonably be
expected to grow out of the [TCHR]'s investigation of the charge." Johnson v. Hoechst
Celanese Corp., 127 S.W.3d 875, 878 (Tex. App.-Corpus Christi 2004, no pet.); Thomas
v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 738 (Tex. App.-Houston [14th Dist.] 1999,
no pet.) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993)).

 In discrimination cases that have not been fully tried on the merits, Texas appellate
courts apply the burden-shifting analysis established by the United States Supreme Court.
See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (citing Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); St. Mary's Honor Ctr.
v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.
248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973);
M.D. Anderson Hosp. v. Willrich, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam)). Under this
analysis, the employee has the initial burden of proving a prima facie case of discrimination
by a preponderance of the evidence. Stanley Stores, Inc. v. Chavana, 909 S.W.2d 554,
559 (Tex. App.-Corpus Christi 1995, writ denied). If the employee is successful in
establishing a prima facie case, the burden shifts to the employer to provide evidence of
a non-discriminatory and legitimate reason for the employment decision. Id. at 560.

 Once the employer provides such evidence, the burden reverts back to the
employee to prove by a preponderance of the evidence that the legitimate reason offered
by the employer for the employment decision was not its true reason, but merely a pretext
for discrimination. Id. To establish this, the employee must show that: (1) the asserted
non-discriminatory reason was false; and (2) discrimination was the actual motivation. St.
Mary's Honor Ctr., 509 U.S. at 515. The employee may also provide evidence that the
employer's decision was based on a mixture of legitimate and illegitimate reasons. Rachid
v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). If the employee proves that the
unlawful reason was a motivating factor, the employer must demonstrate that it would have
taken the same action in the absence of the impermissible motivating factor. Id. at 309-10.

IV. Analysis

 Gomez raises three issues on appeal, contending that: (1) the Charge was timely
filed; (2) summary judgment in favor of Boeing was error because Boeing did not address
certain of Gomez's claims; and (3) summary judgment in favor of Vertex was error because
Vertex did not address Gomez's constructive discharge, successor-entity liability, and
respondeat superior claims.

A. Timeliness of Charge

 Gomez was laid off by Boeing on September 30, 2003, when Boeing's contract to
operate the Kingsville facility ended. He filed his Charge with the EEOC more than 180
days later, on May 27, 2004. (6) Gomez's allegations of discrimination against Boeing are
based entirely on the following facts: (1) Boeing failed to provide him with certain training
that was made available to other employees, and (2) Boeing laid him off on September 30,
2003, supposedly in retaliation for complaints made by Gomez to his union. None of these
discriminatory acts allegedly committed by Boeing occurred within 180 days of Gomez's
filing of the Charge. (7)

 Gomez contends that the discrimination and retaliation on the part of Boeing was
a "continuing violation" and therefore that his Charge was timely filed with respect to
Boeing. "The continuing violation theory relieves a plaintiff of establishing that all of the
complained-of conduct occurred within the actionable period if the plaintiff can show a
series of related acts, one or more of which falls within the limitations period." Cooper-Day
v. RME Petroleum Co., 121 S.W.3d 78, 86 (Tex. App.-Fort Worth 2003, no pet.) (citing
Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998)). However, the theory does not
apply here because Gomez failed to allege, either in the Charge (8) or in his petition, that
Boeing committed "one or more" acts of discrimination within the applicable time period. 
See Cooper-Day, 121 S.W.3d at 86.

 We therefore conclude that the trial court did not err in granting summary judgment
in favor of Boeing on the grounds that Gomez did not file his Charge within the limitations
period. (9) See Tex. Lab. Code Ann. § 21.202(a); Schroeder, 813 S.W.2d at 486.

 The discriminatory or retaliatory acts allegedly committed by Vertex, however, did
occur within the limitations period. Specifically, Gomez alleged that Vertex discriminated
against him when it declined to hire him for the ordnance mechanic position in January of
2004. Although Gomez did not specifically refer to this employment decision in the
Charge, Gomez did state that he "was forced to quit my job on January 23, 2004." The
employment decision by Vertex, which occurred less than 180 days prior to the filing of the
Charge, was "factually related" to the specific allegations contained in the Charge and
"could reasonably [have been] expected to grow out of the [TCHR]'s investigation" of the
Charge. See Johnson, 127 S.W.3d at 878; Thomas, 2 S.W.3d at 738. Therefore,
Gomez's first issue is sustained as it relates to Vertex.

B. Claims Against Vertex

 By his third issue, Gomez claims that summary judgment in favor of Vertex on his
TCHRA claims was erroneous because Vertex did not address his successor-entity liability,
respondeat superior, or constructive discharge claims in its motion for summary
judgment. (10)

 1. Successor-Entity Liability and Respondeat Superior

 With regard to Gomez's claim that it failed to address his theories of recovery based
on successor-entity liability and respondeat superior, Vertex responds by claiming that
Gomez failed to preserve these issues because he did not raise them in response to
Vertex's motion for summary judgment. We agree that Gomez failed to preserve these
issues for our review.

 "Issues not expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P.
166a(c). Gomez did not allege in his response to Vertex's motion for summary judgment
that such judgment was improper because Vertex failed to address his successor-entity
liability or respondeat superior theories. Rather, in his response, Gomez sought only to (1)
refute Vertex's claim that the trial court lacked subject matter jurisdiction, and (2) establish
that there is a genuine issue of material fact regarding whether Vertex discriminated or
retaliated against Gomez. Accordingly, we may not reverse the trial court's judgment on
these grounds.

 2. Constructive Discharge

 To establish a prima facie case of employment discrimination based on an
employer's failure to promote, a plaintiff must show that he or she: (1) was a member of
a protected class; (2) sought and was qualified for an available employment position; (3)
despite his qualifications, was not selected for the position; and (4) the employer selected
someone not in plaintiff's protected class or continued to seek applicants with the plaintiff's
qualifications. See McDonnell Douglas Corp., 411 U.S. at 802; Elgaghil v. Tarrant County
Junior Coll., 45 S.W.3d 133, 139 (Tex. App.-Fort Worth 2000, pet. denied) (citing Scales
v. Slater, 181 F.3d 703, 709 (5th Cir. 1999)). Constructive discharge serves as a legal
substitute for the element of a prima facie case of discrimination requiring the plaintiff to
show that he or she was not selected for the position. See Passons v. Univ. of Tex. at
Austin, 969 S.W.2d 560, 562 (Tex. App.-Austin 1998, no pet.) (citing Hammond v. Katy
Indep. Sch. Dist., 821 S.W.2d 174, 177 (Tex. App.-Houston [14th Dist.] 1991, no writ)). 
Constructive discharge occurs when an employer makes conditions so intolerable that an
employee reasonably feels compelled to resign. Hammond, 821 S.W.2d at 177 (citing
Shawgo v. Spradlin, 701 F.2d 470, 481 (5th Cir. 1983)).

 Gomez claims that summary judgment for Vertex was improper because Vertex did
not address the constructive discharge allegation in its motion for summary judgment. 
However, constructive discharge constitutes only one element in a discrimination cause
of action. See Bertrand, 37 S.W.3d at 8. As a movant for traditional summary judgment,
Vertex had the burden to negate only one essential element of Gomez's causes of action
or prove all essential elements of an affirmative defense. See Randall's Food Markets, Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In its motion, Vertex contended that it
declined to promote Gomez because (1) he admitted he could not perform the essential
duties of the job, and (2) the other applicant that was subsequently hired was "the better
applicant overall and correctly answered 100% of his questions during his interview, while
Gomez correctly answered only 60%." This was sufficient to negate the second element
of a discrimination cause of action, requiring the plaintiff to show that he was qualified for
the available employment position. See McDonnell Douglas Corp., 411 U.S. at 802; 
Elgaghil, 45 S.W.3d at 139. That Vertex did not attempt to negate the constructive
discharge element of Gomez's discrimination claims does not, by itself, establish that
summary judgment in favor of Vertex was unfounded. In other words, even if Vertex failed
to address constructive discharge in its motion for summary judgment, it still could have
obtained summary judgment by successfully attacking any one of the other elements of a
discrimination cause of action.

 Accordingly, Gomez's third issue is overruled.

V. Conclusion

 We affirm the trial court's judgment.

 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 23rd day of October, 2008.
1. Gomez was 43 years of age at the time he resigned from Vertex.
2. In his responses to Vertex's and Boeing's motions for summary judgment, Gomez abandoned his
claim of intentional infliction of emotional distress.
3. Adhering to legislative intent, Texas courts have looked to federal law in interpreting the TCHRA's
provisions. See NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999).
4. The powers and duties exercised by the Texas Commission on Human Rights have since been
transferred to the civil rights division of the Texas Workforce Commission. Tex. Lab. Code Ann. § 21.0015
(Vernon 2006).
5. Gomez, Boeing, and Vertex agree that the TCHRA's limitations period is mandatory and
jurisdictional. See Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam);
Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 486 (Tex. 1991). However, courts of appeals have
questioned whether the supreme court's decision in Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76-77 (Tex.
2000), altered this rule. See id. (overruling Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084 (Tex. 1926) "to
the extent it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional"). Compare
Wal-Mart Stores, Inc. v. Canchola, 64 S.W.3d 524, 534 (Tex. App.-Corpus Christi 2001), rev'd on other
grounds, 121 S.W.3d 735 (Tex. 2003) (questioning whether TCHRA's requirements are jurisdictional after
Dubai but not resolving the issue); and King v. Tex. Dep't of Human Servs., 28 S.W.3d 27, 31 & n.1 (Tex.
App.-Austin 2000, no pet.) (same); with El Paso County v. Navarrete, 194 S.W.3d 677, 681-82 (Tex. App.-El
Paso 2006, pet. denied) (noting Dubai but instead relying on Schroeder); and Czerwinski v. Univ. of Tex.
Health Sci. Ctr., 116 S.W.3d 119, 121 (Tex. App.-Houston [14th Dist.] 2002, pet. denied) (failure to timely file
an administrative complaint deprives the trial court of subject matter jurisdiction).


 We need not resolve this apparent conflict, however, because regardless of whether a failure to timely
file a charge of discrimination deprives the trial court of jurisdiction, such a failure would indisputably constitute
sufficient grounds upon which to base a summary judgment. See Creditwatch, Inc. v. Jackson, 157 S.W.3d
814, 816 n.4 (Tex. 2005); Ramirez v. DRC Distribs., 216 S.W.3d 917 (Tex. App.-Corpus Christi 2007, pet.
denied).
6. A complaint initially filed with the EEOC is deemed to have been filed with the TCHR as well. Price
v. Phila. Am. Life Ins. Co., 934 S.W.2d 771, 773 (Tex. App.-Houston [14th Dist.] 1996, no writ).
7. We note also that Gomez appeared to admit, in deposition testimony included with Boeing's motion
for summary judgment, that there was no discriminatory or retaliatory motive underlying Boeing's decision to
terminate him on September 30, 2003. Gomez testified as follows:


Q. [Boeing's attorney] You're not telling the Court that you were selected for layoff in - that
your selection for layoff was discriminatory or retaliatory?


A. [Gomez] Everybody got laid off at the same time.


Q. So answer my question, you're not saying you were discriminated
or retaliated against when you were permanently laid off?


A. No.
8. The Charge, which was completed on an form promulgated by the EEOC, contained a box labeled
"Continuing Action" which was not checked by Gomez. However, "[m]arking 'continuing action' is not required
to establish a claim of continuing violation so long as 'allegations or predicate facts [are] sufficient in the EEOC
complaint' to establish that a continuing violation theory is being alleged." Strouss v. Mich. Dep't of Corr., 75
F. Supp. 2d 711, 723 (E.D. Mich. 1999) (citing Haithcock v. Frank, 958 F.2d 671, 676 (6th Cir. 1992)). 
Nevertheless, Gomez did not allege sufficient facts to establish a continuing violation on the part of Boeing.
9. Because we find that the trial court's summary judgment in favor of Boeing was justified based on
Gomez's failure to file his Charge within the limitations period, we need not address Gomez's second issue. 
Tex. R. App. P. 47.1.
10. Although Gomez purports to challenge the summary judgment in favor of Vertex "on all of Gomez's
claims," he does not provide any argument or authority pertaining to his claims of negligence and intentional
infliction of emotional distress. Accordingly, we consider any issue challenging the summary judgment on
these claims to have been waived. Tex. R. App. P. 38.1(h).