

NUMBER 13-07-00082-CV

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LORENZO GOMEZ,                                  **Appellant,**

**v.**

**VERTEX AEROSPACE, LLC, THE
BOEING COMPANY, AND
MCDONNELL DOUGLAS CORPORATION,**         **Appellees.**

On appeal from the 105th District Court of Kleberg County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

Appellant, Lorenzo Gomez, challenges the trial court's summary judgment in favor of appellees, Vertex Aerospace, LLC ("Vertex"), The Boeing Company ("Boeing"), and McDonnell Douglas Corporation ("McDonnell Douglas"). Gomez sued appellees, his former employers, alleging employment discrimination. The trial court granted summary judgment dismissing all of Gomez's claims against all defendants. On appeal, Gomez contends that: (1) he filed a timely and sufficient charge of discrimination; (2) the trial court erred in granting summary judgment on all of his claims against Vertex; and (3) the trial

court erred in granting summary judgment on all of his claims against Boeing.  We affirm.

## I. BACKGROUND

Gomez was hired in June of 1987 as an aircraft corrosion control inspector at Naval Air Station Kingsville ("NAS Kingsville").  Lockheed Support Systems ("Lockheed") was the civilian contractor in charge of performing aircraft maintenance and other functions at NAS Kingsville until 1990, when it lost its contract to Grumman Technical Services ("Grumman").  Gomez worked first for Lockheed as an aircraft corrosion control inspector, then for Grumman as an aviation ordnance corrosion inspector when Grumman took over as the contractor.  Later, when Grumman lost its contract to UNC Technical Services ("UNC"), Grumman laid off Gomez and UNC hired Gomez to perform the same job.

In April 1992, Gomez was hired as an ordnance mechanic by McDonnell Douglas, which had contracted to manufacture a new training aircraft, the T45, at NAS Kingsville.  Boeing later acquired McDonnell Douglas, and Gomez then became a Boeing employee.

Beginning in 1998, Gomez filed a series of workers' compensation claims for back injuries he claimed to have suffered while on the job.  Because of the injuries, Gomez was subjected to lifting restrictions and reduced hours.  By August 1, 2003, Gomez's physician had cleared him to work eight hours per day, six days per week, with a lifting restriction of sixty pounds.  In a grievance filed with his union, Gomez claimed that he suffered hostility and harassment by his supervisors and co-workers as a result of these restrictions.

Like Lockheed, Grumman, and UNC before it, Boeing eventually lost its contract.  Vertex, formerly known as Raytheon Aerospace, assumed the contract as of October 1, 2003.  On September 30, 2003, the day before Vertex assumed the contract, all Boeing employees at NAS Kingsville were laid off.  Gomez was rehired by Vertex on October 1 as an aircraft servicer, or washer, rather than as an ordnance mechanic.  As an aircraft servicer, Gomez was required to work under and around aircraft in positions that aggravated his back injuries.  In December of 2003, an ordnance mechanic position

opened up. Gomez applied, but was told that the position required working more than eight hours per day. Vertex notes that, unlike Boeing, it requires ordnance mechanics to be available to work night shifts and weekends, as well as ten-hour or twelve-hour shifts. As part of its interview process, Vertex administered a five-question quiz to applicants for the position; Gomez answered two of the questions incorrectly whereas the successful applicant answered all five correctly. According to Gomez, the position went instead to a "white, younger, and less qualified" applicant. Having been denied the promotion to ordnance mechanic, Gomez resigned on January 12, 2004. He later obtained employment at the Corpus Christi Army Depot.

On May 27, 2004, Gomez filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), claiming that both Vertex and Boeing discriminated against him on the basis of his national origin, age,[1] and disability. Specifically, Gomez stated in the Charge that:

> I was denied training that others were allowed to attend by McDonnell Douglas/Boeing. I was then chosen for layoff on September 30, 2003.
>
> I was placed in a lower-paying, lower skilled position by Vertex, beginning October 2003. As a result, I was forced to quit my job on January 23, 2004.
>
> I feel I have been discriminated against because of my national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended; my age, d.o.b. July 13, 1960, in violation of the Age Discrimination Employment Act of 1967, as amended, and Title I, the Americans with Disabilities Act of 1990, as amended.

Gomez received a right to sue letter on February 28, 2005. *See* TEX. LAB. CODE ANN. § 21.252 (Vernon 2006) (stating that a complainant who receives notice that a discrimination complaint is not dismissed or resolved is entitled to request a written notice of the complainant's right to file a civil action). He then filed suit on April 28, 2005, against Boeing and Vertex, alleging violations of the Texas Commission on Human Rights Act ("TCHRA"), negligence, and intentional infliction of emotional distress. In his original

---

[1] Gomez was 43 years of age at the time he resigned from Vertex.

petition, Gomez made the following specific allegations of discrimination and retaliation:

Mr. Gomez was given notice that he would be terminated effective September 30, 2003. As a result of such notice, he was denied training that other persons who were similarly situated were given to advance their job skills and employability with the Defendants.

. . . .

Mr. Gomez was discriminated in his termination from Boeing in [sic] or about October 1, 2003, because of his age (44), national origin (Hispanic), perceived disability (back), and the fact that he had complained about preceding acts of discrimination through the Union and his Union membership.

. . . .

Vertex . . . placed Mr. Gomez in a lower-paying and lower-skilled position, as an Aircraft Servicer, a demotion undeserved by any fault on the part of Mr. Gomez.

. . . .

Mr. Gomez was required to work 8.5 hours in each workday, when others were required to work the usual 8.0 hours in each workday.

. . . .

Mr. Gomez complained of his treatment to the Union. He was retaliated against for his Union complaint and membership when he was terminated.

. . . .

Mr. Gomez applied for the position of Ordinance [sic] Mechanic [with Vertex]. Vertex gave Mr. Gomez a position, but did not offer him the same position in Ordinance [sic] in which he had 9.5 years of experience. Vertex increased Mr. Gomez's workload and put him in a position where his physical restrictions and limitations – a back injury – affected his ability to perform his duties.

. . . .

Mr. Gomez was demoted to Aircraft Servicer (Washer).

. . . .

Vertex discriminated in its hiring practices in that the person who got the position was less qualified, Anglo, and younger.

. . . .

During his employment, Mr. Gomez made complaints about his assignment

4

through the Union, as was customary. Because of his complaints, Vertex retaliated against Mr. Gomez by precluding him from training, demotion, and ultimately by constructive discharge.

. . . .

Mr. Gomez was constructively discharged on or about January 23, 2004, from his position as Aircraft Servicer.

Gomez sought damages for "back pay, front pay, lost earnings, lost wages, diminished earnings [sic] capacity, physical and mental pain and anguish [and] loss of benefits," as well as exemplary damages and attorney's fees.

Vertex filed a motion for traditional summary judgment on April 4, 2006, contending that: (1) Gomez's claims of discrimination under the TCHRA were procedurally barred and substantively deficient; (2) his claim of negligence was barred by the Texas Workers' Compensation Act ("TWCA"); and (3) his intentional infliction of emotional distress claim was barred because it was not independent of his discrimination claims. On April 17, 2006, Boeing filed its own motion for summary judgment which incorporated both traditional and no-evidence grounds. Specifically, Boeing argued that it was entitled to judgment as a matter of law on Gomez's discrimination claims because: (1) Gomez admitted that his layoff was not discriminatory; (2) the denial of training as alleged in the Charge did not cause Gomez to suffer any adverse employment action; (3) Gomez admitted that Boeing was not responsible for Vertex's actions; and (4) even if Boeing was responsible for Vertex's actions, Gomez produced no evidence showing that Vertex discriminated against him. Boeing also alleged that Gomez's retaliation claims must fail because (1) Gomez did not exhaust his administrative remedies, and (2) he did not engage in any of the "protected activities" enumerated in the Texas Labor Code. *See id.* § 22.055(1)-(4) (Vernon 2006). Finally, Boeing, like Vertex, claimed that Gomez's negligence and intentional infliction of emotional distress claims were groundless.

Gomez filed his responses to the summary judgment motions of both Vertex and Boeing on May 12, 2006. In his response to Vertex's motion, Gomez contended that his

5

TCHRA claims were not procedurally barred and that neither the TCHRA nor common-law negligence were pre-empted by the TWCA. In his response to Boeing's motion, Gomez claimed that he did not admit that his layoff was not discriminatory and that there were questions of material fact as to his claims of discrimination, retaliation, and negligence.[2]

On October 20, 2006, the trial court granted Vertex's and Boeing's motions for summary judgment. The order stated specifically that "[t]he Court is of the opinion that the Motions [for summary judgment] are each well-taken in all respects and should be and hereby are GRANTED in their entirety." The trial court dismissed all of Gomez's claims and assessed costs against Gomez. Gomez filed a motion for new trial on November 17, 2006, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. STANDARD OF REVIEW

The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). We review a trial court's grant or denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz*, 105 S.W.3d at 345.

To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary

---

[2] In his responses to Vertex's and Boeing's motions for summary judgment, Gomez abandoned his claim of intentional infliction of emotional distress.

6

judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Grinnell*, 951 S.W.2d at 425 (citing *Nixon*, 690 S.W.2d at 549).

For a no-evidence summary judgment motion to be successful, the movant must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims upon which he would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Holstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.–Austin 2000, no pet.). When responding to a no-evidence motion, the non-movant is only required to present evidence that raises a genuine issue of material fact on the challenged elements. *See AMS Constr. Co., Inc. v. Warm Springs Rehab. Found., Inc.*, 94 S.W.3d 152, 159 (Tex. App.–Corpus Christi 2002, no pet.) (citing *McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258 (Tex. App.–Texarkana 1999, pet. denied)). The non-movant must produce more than a scintilla of probative evidence to raise an issue of material fact. *Oasis Oil Corp. v. Koch Ref. Co.*, 60 S.W.3d 248, 252 (Tex. App.–Corpus Christi 2001, pet. denied). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

If the trial court's order granting summary judgment does not specify the ground or grounds relied upon for the ruling, as is the case here, we will affirm the judgment on appeal if any of the theories advanced by the movant are meritorious. *Dow Chem. Co. v.*

7

*Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

### III. APPLICABLE LAW

The Legislature enacted the TCHRA in 1983 for the purpose of correlating state law with federal law in employment discrimination cases. TEX. LAB. CODE ANN. § 21.001 (Vernon 2006); *see NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). The TCHRA, mirroring Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act of 1967, *see* 29 U.S.C. § 623, and the Americans with Disabilities Act of 1990, *see* 42 U.S.C. § 12112,[3] prohibits an employer from discharging or in any other way discriminating against an employee because of the employee's race, color, disability, religion, sex, national origin, or age. *See* TEX. LAB. CODE ANN. § 21.051 (Vernon 2006).

Before suing an employer in state court, an employee must exhaust his administrative remedies by first filing a complaint with the Texas Commission on Human Rights ("TCHR")[4] within 180 days of the alleged discriminatory act.[5] *Schroeder v. Tex. Iron*

---

[3] Adhering to legislative intent, Texas courts have looked to federal law in interpreting the TCHRA's provisions. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

[4] The powers and duties exercised by the Texas Commission on Human Rights have since been transferred to the civil rights division of the Texas Workforce Commission. TEX. LAB. CODE ANN. § 21.0015 (Vernon 2006).

[5] Gomez, Boeing, and Vertex agree that the TCHRA's limitations period is mandatory and jurisdictional. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991). However, courts of appeals have questioned whether the supreme court's decision in *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000), altered this rule. *See id.* (overruling *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084 (Tex. 1926) "to the extent it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional"). *Compare Wal-Mart Stores, Inc. v. Canchola*, 64 S.W.3d 524, 534 (Tex. App.–Corpus Christi 2001), *rev'd on other grounds*, 121 S.W.3d 735 (Tex. 2003) (questioning whether TCHRA's requirements are jurisdictional after *Dubai* but not resolving the issue); *and King v. Tex. Dep't of Human Servs.*, 28 S.W.3d 27, 31 & n.1 (Tex. App.–Austin 2000, no pet.) (same); *with El Paso County v. Navarrete*, 194 S.W.3d 677, 681-82 (Tex. App.–El Paso 2006, pet. denied) (noting *Dubai* but instead relying on *Schroeder*); *and Czerwinski v. Univ. of Tex. Health Sci. Ctr.*, 116 S.W.3d 119, 121 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) (failure to timely file an administrative complaint deprives the trial court of subject matter jurisdiction).

We need not resolve this apparent conflict, however, because regardless of whether a failure to timely file a charge of discrimination deprives the trial court of jurisdiction, such a failure would indisputably constitute sufficient grounds upon which to base a summary judgment. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d

*Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991); *see* TEX. LAB. CODE ANN. § 21.202(a) (Vernon 2006). In order to comply with the exhaustion requirement, an employee must: (1) file a complaint with the TCHR within 180 days of the alleged discriminatory act; (2) allow the TCHR to dismiss the complaint or resolve the complaint within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. *See* TEX. LAB. CODE ANN. §§ 21.201-.202, 21.208, 21.256 (Vernon 2006).

A lawsuit filed pursuant to the TCHRA is then limited to claims made in the discrimination complaint as well as any "factually related claims that could reasonably be expected to grow out of the [TCHR]'s investigation of the charge." *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875, 878 (Tex. App.–Corpus Christi 2004, no pet.); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)).

In discrimination cases that have not been fully tried on the merits, Texas appellate courts apply the burden-shifting analysis established by the United States Supreme Court. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam)). Under this analysis, the employee has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex. App.–Corpus Christi 1995, writ denied). If the employee is successful in establishing a prima facie case, the burden shifts to the employer to provide evidence of a non-discriminatory and legitimate reason for the employment decision. *Id.* at 560.

---

814, 816 n.4 (Tex. 2005); *Ramirez v. DRC Distribs.*, 216 S.W.3d 917 (Tex. App.–Corpus Christi 2007, pet. denied).

Once the employer provides such evidence, the burden reverts back to the employee to prove by a preponderance of the evidence that the legitimate reason offered by the employer for the employment decision was not its true reason, but merely a pretext for discrimination. *Id.* To establish this, the employee must show that: (1) the asserted non-discriminatory reason was false; and (2) discrimination was the actual motivation. *St. Mary's Honor Ctr.*, 509 U.S. at 515. The employee may also provide evidence that the employer's decision was based on a mixture of legitimate and illegitimate reasons. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). If the employee proves that the unlawful reason was a motivating factor, the employer must demonstrate that it would have taken the same action in the absence of the impermissible motivating factor. *Id.* at 309-10.

## IV. ANALYSIS

Gomez raises three issues on appeal, contending that: (1) the Charge was timely filed; (2) summary judgment in favor of Boeing was error because Boeing did not address certain of Gomez's claims; and (3) summary judgment in favor of Vertex was error because Vertex did not address Gomez's constructive discharge, successor-entity liability, and respondeat superior claims.

### A.    Timeliness of Charge

Gomez was laid off by Boeing on September 30, 2003, when Boeing's contract to operate the Kingsville facility ended. He filed his Charge with the EEOC more than 180 days later, on May 27, 2004.[6] Gomez's allegations of discrimination against Boeing are based entirely on the following facts: (1) Boeing failed to provide him with certain training that was made available to other employees, and (2) Boeing laid him off on September 30, 2003, supposedly in retaliation for complaints made by Gomez to his union. None of these discriminatory acts allegedly committed by Boeing occurred within 180 days of Gomez's

---

[6] A complaint initially filed with the EEOC is deemed to have been filed with the TCHR as well. *Price v. Phila. Am. Life Ins. Co.*, 934 S.W.2d 771, 773 (Tex. App.–Houston [14th Dist.] 1996, no writ).

filing of the Charge.[7]

Gomez contends that the discrimination and retaliation on the part of Boeing was a "continuing violation" and therefore that his Charge was timely filed with respect to Boeing. "The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 86 (Tex. App.–Fort Worth 2003, no pet.) (citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)). However, the theory does not apply here because Gomez failed to allege, either in the Charge[8] or in his petition, that Boeing committed "one or more" acts of discrimination within the applicable time period. *See Cooper-Day*, 121 S.W.3d at 86.

We therefore conclude that the trial court did not err in granting summary judgment in favor of Boeing on the grounds that Gomez did not file his Charge within the limitations period.[9]  *See* TEX. LAB. CODE ANN. § 21.202(a); *Schroeder*, 813 S.W.2d at 486.

The discriminatory or retaliatory acts allegedly committed by Vertex, however, did

---

[7] We note also that Gomez appeared to admit, in deposition testimony included with Boeing's motion for summary judgment, that there was no discriminatory or retaliatory motive underlying Boeing's decision to terminate him on September 30, 2003.  Gomez testified as follows:

Q. [Boeing's attorney]   You're not telling the Court that you were selected for layoff in – that your selection for layoff was discriminatory or retaliatory?

A. [Gomez]   Everybody got laid off at the same time.

Q.   So answer my question, you're not saying you were discriminated or retaliated against when you were permanently laid off?

A.   No.

[8] The Charge, which was completed on an form promulgated by the EEOC, contained a box labeled "Continuing Action" which was not checked by Gomez. However, "[m]arking 'continuing action' is not required to establish a claim of continuing violation so long as 'allegations or predicate facts [are] sufficient in the EEOC complaint' to establish that a continuing violation theory is being alleged." *Strouss v. Mich. Dep't of Corr.*, 75 F. Supp. 2d 711, 723 (E.D. Mich. 1999) (citing *Haithcock v. Frank*, 958 F.2d 671, 676 (6th Cir. 1992)). Nevertheless, Gomez did not allege sufficient facts to establish a continuing violation on the part of Boeing.

[9] Because we find that the trial court's summary judgment in favor of Boeing was justified based on Gomez's failure to file his Charge within the limitations period, we need not address Gomez's second issue. TEX. R. APP. P. 47.1.

occur within the limitations period. Specifically, Gomez alleged that Vertex discriminated against him when it declined to hire him for the ordnance mechanic position in January of 2004. Although Gomez did not specifically refer to this employment decision in the Charge, Gomez did state that he "was forced to quit my job on January 23, 2004." The employment decision by Vertex, which occurred less than 180 days prior to the filing of the Charge, was "factually related" to the specific allegations contained in the Charge and "could reasonably [have been] expected to grow out of the [TCHR]'s investigation" of the Charge. *See Johnson*, 127 S.W.3d at 878; *Thomas*, 2 S.W.3d at 738. Therefore, Gomez's first issue is sustained as it relates to Vertex.

## B.   Claims Against Vertex

By his third issue, Gomez claims that summary judgment in favor of Vertex on his TCHRA claims was erroneous because Vertex did not address his successor-entity liability, respondeat superior, or constructive discharge claims in its motion for summary judgment.[10]

### 1.   *Successor-Entity Liability and Respondeat Superior*

With regard to Gomez's claim that it failed to address his theories of recovery based on successor-entity liability and respondeat superior, Vertex responds by claiming that Gomez failed to preserve these issues because he did not raise them in response to Vertex's motion for summary judgment. We agree that Gomez failed to preserve these issues for our review.

"Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Gomez did not allege in his response to Vertex's motion for summary judgment

---

[10] Although Gomez purports to challenge the summary judgment in favor of Vertex "on all of Gomez's claims," he does not provide any argument or authority pertaining to his claims of negligence and intentional infliction of emotional distress. Accordingly, we consider any issue challenging the summary judgment on these claims to have been waived. TEX. R. APP. P. 38.1(h).

12

that such judgment was improper because Vertex failed to address his successor-entity liability or respondeat superior theories.  Rather, in his response, Gomez sought only to (1) refute Vertex's claim that the trial court lacked subject matter jurisdiction, and (2) establish that there is a genuine issue of material fact regarding whether Vertex discriminated or retaliated against Gomez.  Accordingly, we may not reverse the trial court's judgment on these grounds.

> ## 2.        *Constructive Discharge*

To establish a prima facie case of employment discrimination based on an employer's failure to promote, a plaintiff must show that he or she:  (1) was a member of a protected class; (2) sought and was qualified for an available employment position; (3) despite his qualifications, was not selected for the position; and (4) the employer selected someone not in plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications.  *See McDonnell Douglas Corp.*, 411 U.S. at 802;  *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.–Fort Worth 2000, pet. denied) (citing *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999)).  Constructive discharge serves as a legal substitute for the element of a prima facie case of discrimination requiring the plaintiff to show that he or she was not selected for the position.  *See Passons v. Univ. of Tex. at Austin*, 969 S.W.2d 560, 562 (Tex. App.–Austin 1998, no pet.) (citing *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.–Houston [14th Dist.] 1991, no writ)).  Constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign.  *Hammond*, 821 S.W.2d at 177 (citing *Shawgo v. Spradlin*, 701 F.2d 470, 481 (5th Cir. 1983)).

Gomez claims that summary judgment for Vertex was improper because Vertex did not address the constructive discharge allegation in its motion for summary judgment.  However, constructive discharge constitutes only one element in a discrimination cause of action.  *See Bertrand*, 37 S.W.3d at 8.  As a movant for traditional summary judgment,

13

Vertex had the burden to negate only one essential element of Gomez's causes of action or prove all essential elements of an affirmative defense.  *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).  In its motion, Vertex contended that it declined to promote Gomez because (1) he admitted he could not perform the essential duties of the job, and (2) the other applicant that was subsequently hired was "the better applicant overall and correctly answered 100% of his questions during his interview, while Gomez correctly answered only 60%."  This was sufficient to negate the second element of a discrimination cause of action, requiring the plaintiff to show that he was qualified for the available employment position.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Elgaghil*, 45 S.W.3d at 139.  That Vertex did not attempt to negate the constructive discharge element of Gomez's discrimination claims does not, by itself, establish that summary judgment in favor of Vertex was unfounded.  In other words, even if Vertex failed to address constructive discharge in its motion for summary judgment, it still could have obtained summary judgment by successfully attacking any one of the other elements of a discrimination cause of action.

Accordingly, Gomez's third issue is overruled.

### V.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 23rd day of October, 2008.

14